261 P.3d 1159 (2011)
2011 OK 77
In the matter of the ADOPTION OF G.D.J., a minor child.
Tessia Bre Stubbs, Appellant,
v.
Terry Pearson and Robert Pearson, Appellees.
Nos. 108889, 109018.
Supreme Court of Oklahoma.
September 20, 2011.
*1160 Rebecca N. Beason and Michael T. Beason, Altus, Oklahoma, for Appellant.
Barry K. Roberts, Norman, Oklahoma, for Appellees.
COMBS, J.
¶ 1 The Petitioners/Appellees, Teryl Pearson and Robert Pearson (Pearsons) petitioned to adopt Teryl Pearson's (Pearson) grandson, G.D.J. (FA 2008-24, Jackson County, Oklahoma) by filing a Petition for Adoption, and an Application to Adjudicate Minor Eligible for Adoption Without Consent of the Natural Mother. The natural mother, Tessia Bre Stubbs (Stubbs), Respondent/Appellant, contested the adoption. The trial court entered two orders on August 11, 2010, in favor of the Pearsons on the Application to Adjudicate Minor Eligible for Adoption Without Consent of the Natural Mother and one order on December 2, 2010, Order Adjudicating Minor Eligible for Adoption Without Consent of the Natural Mother. This is a consolidated appeal of those orders. A final *1161 hearing on the Petition for Adoption has not occurred and is not the subject of this appeal.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 On October 21, 2008, the Pearsons filed a Petition for Adoption and Application to Adjudicate Minor Eligible for Adoption Without the Consent of the Natural Mother (AWOC), in Jackson County, Oklahoma (FA 2008-24). The Pearsons seek to adopt Pearson's grandson, G.D.J., a child who is alleged to be of Native American descent (Seminole Nation). The grounds alleged for the Adoption Without Consent were based on the failure of Stubbs to contribute to the support of G.D.J., and failure to maintain a meaningful relationship with G.D.J.[1] As the petition asserted, G.D.J. was eligible for membership in the Seminole Nation. The Seminole Nation and Bureau of Indian Affairs were given notice of the proceedings.
¶ 3 On December 22, 2008, the Seminole Nation intervened and requested notification of all hearings, access to all documents submitted to the court, leave to submit its own reports and evidence, and leave to proceed further. On December 29, 2008, the Seminole Nation announced to the trial court that it would not seek to transfer the case to tribal court.[2] The Seminole Nation has been given notice of all pleadings and hearings throughout the case. On March 4, 2009, Stubbs filed her Answer to the Application to Adjudicate Minor Eligible for Adoption Without Consent of the Natural Mother, and contested the proceedings. Stubbs alleged that because G.D.J. is eligible for membership in the Seminole Nation, the state and federal Indian Child Welfare Acts apply.[3]
¶ 4 On February 3 and 24, 2009, an attorney and guardian ad litem respectively were appointed by the trial court for G.D.J. On November 19, 2009, Appellant filed a Motion to Dismiss the FA 2008-24 case on the grounds that another case before the same court (FA 2009-24) had already granted an order adjudicating G.D.J. to be eligible for an adoption without consent of the natural mother and was therefore res judicata.[4] The trial court denied Appellants Motion to Dismiss on December 18, 2009.
¶ 5 The trial on Appellees' Application to Adjudicate Minor Eligible for Adoption Without Consent of the Natural Mother began on March 10, 2010. The testimony revealed Pearson provided all the support for G.D.J. since that child was born, including food and housing. Stubbs revealed to Pearson that she and G.D.J.'s father, Brantley Jones, had been using drugs and, on April 17, 2007, Appellees sought and obtained emergency temporary custody of G.D.J. because the mother was in jail on criminal charges.[5] On October 6, 2008, an order was entered granting Pearson custody of G.D.J. This order also required Appellant to pay child support. Trial testimony demonstrated, during the relevant period, Appellant paid no money for G.D.J.'s support, and Appellant had been periodically *1162 employed and had income from other sources during the relevant period.[6]
¶ 6 Testimony was presented showing Stubbs had no meaningful or positive contact with G.D.J. Pearson kept records of Stubbs' visitations and phone calls. Contacts were sporadic, and there would be weeks at a time where no contact was made. Additional evidence indicated Stubbs had relationships with a convicted sex offender and another convicted felon, and G.D.J. was present during some of those contacts. The Pearsons presented evidence showing Stubbs had called to ask for visitation only five times in the fourteen months preceding the filing of the Petition for Adoption, and for seven of those fourteen months, she had no contact with G.D.J.[7]
¶ 7 At trial on March 11, 2010, Appellant's counsel demurred to the evidence. The grounds for the demurrer were that Pearson had gained possession of G.D.J. in the previous custody case (CV 2007-159) in contravention of Oklahoma law, and Stubbs had been ordered not to pay support in a previous paternity case (CV 2006-335).[8] Briefs were submitted, and on March 26, 2010, the demurrer was denied.
¶ 8 Following the denial of Stubbs' demurrer, Stubbs presented no evidence to controvert her failure to pay support during the relevant period. Stubbs admitted she had paid no money to the Pearsons for G.D.J.'s support, or brought any other items of support to the Pearsons during the relevant period.[9] She did not dispute her violations of the law, drug use, or association with felons. Stubbs did not institute any court proceedings in regard to denial of visitation with G.D.J. during the relevant period.
¶ 9 The trial concluded on April 14, 2010. Appellant's counsel, having filed a Motion Requesting Findings of Fact and Conclusions of Law, chose to rely on the trial court to draft written findings of fact and conclusions of law, and did not submit proposed Findings of Fact and Conclusions of Law.
¶ 10 On August 11, 2010, the trial court made two orders: (1) Order Addressing Failure to Support, 10 O.S. Section 7505-4.2(B) and; (2) Order Addressing Failure to Maintain Relationship, 10 O.S. Section 7505-4.2(H). In the order addressing failure to support G.D.J., the court found Appellant paid no support between August 21, 2007, and October 21, 2008; the Appellees paid one hundred percent (100%) of the support for G.D.J.; the agreement to pay no child support between the parents to G.D.J., in case CV 2006-335, did not negate her duty of support; Appellant had the ability to obtain gainful employment; Appellant had income from other unidentified sources; and was aware she had an obligation to support G.D.J. The trial court found the Appellees had proven, by clear and convincing evidence, Appellant willfully failed and neglected to contribute to the support of G.D.J. according to her financial ability.
¶ 11 In the second order addressing failure to maintain relationship, the trial court found, between August 21, 2007, and October 21, 2008, Appellant had thirteen contacts with G.D.J., no more than three times in any month, and during seven of the fourteen months, she had no contact with G.D.J. The trial court determined during two of these visits, Appellant was in the company of convicted felons, one of whom was a registered sex offender. The trial court found the contacts were neither positive nor substantial and the Appellees met their burden of proof by clear and convincing evidence, and Appellant failed to establish and/or maintain a substantial and positive relationship with the minor child, pursuant to 10 O.S. Supp.2007, Section 7505-4.2(H).
*1163 ¶ 12 On August 19, 2010, Appellant filed a motion for new trial on the grounds the two orders were not sustained by sufficient evidence and/or were contrary to law. A hearing was had on October 18, 2010, at which time Appellant raised the defense of lack of subject-matter jurisdiction. The trial court denied the motion for new trial on October 20, 2010.
¶ 13 On October 7, 2010, Appellees filed a Motion to Settle Journal Entry and submitted a proposed order adjudicating G.D.J. eligible for adoption without consent of the natural mother. The Appellant filed her Objections and a Response. On November 5, 2010, Appellant filed a Petition in error with this Court appealing the August 11, 2010 orders.[10] On November 12, 2010, Appellees filed a Motion to Dismiss Appeal. On December 13, 2010, this Court denied the Motion to Dismiss.
¶ 14 A hearing was held on November 29, 2010, on the Motion to Settle Journal Entry, originally filed October 7, 2010. Appellees argued the August 11, 2010, orders were not final appealable orders. The Appellant argued the orders were appealable pursuant to Supreme Court Rule 1.20(b) and Title 12 O.S. §§ 681, 696.2 and 696.3. She also argued the trial court lacked subject-matter jurisdiction pursuant to Supreme Court Rule 1.37.
¶ 15 The trial court issued an Order Adjudicating Minor Eligible for Adoption Without Consent of the Natural Mother on December 2, 2010. The trial court also issued an order on the same day stating its findings as follows:
Section 611 of Title 12 states that upon the request of a party, findings shall be made "upon questions of law involved in the trial." The record does not reflect that "questions of law" were raised, presented, or involved at trial as to the issues of subject matter jurisdiction or compliance with either UCCJEA or ICWA. Rather, the only "questions of law involved in the trial" and presented as contested issues and questions for the Court were: whether the natural mother failed to contribute to the support of the minor child as per 10 O.S. Section 7507(sic)-4.2(B), and whether she failed to maintain a relationship as set forth in 10 O.S. Section 7507(sic)-4.2(H). Although the Court may have erroneously entitled the findings of fact and conclusions of law filed on August 11, 2010 as "orders", (sic) the filed document in fact reflects findings of fact and conclusions of law as requested by the natural mother. The Court declines to make further findings of fact and conclusions of law, but does on this date enter an Order Adjudicating Minor Eligible for Adoption without Consent of the Natural Mother, all for the reasons stated in the record by Attorneys Womack, Mills and Dresback and to memorialize by Journal Entry the findings of fact and conclusions of law filed on August 11, 2010..(sic)[11]
¶ 16 On December 13, 2010, this Court issued an Order denying the Motion to Dismiss Appeal filed on November 12, 2010. We additionally held the August 11, 2010, orders were final orders, and the appeal may proceed. Any party who was aggrieved by the trial court's order concerning the Motion to Settle Journal Entry was authorized to file a supplemental petition in error to seek review of that order. Appellant then filed a Supplemental Petition in Error and a second Petition in Error, as well as a Motion to Consolidate the two appeals.[12] This Court issued an order consolidating the two appeals under Case No. 108,889, on December 21, 2010.

STANDARD OF REVIEW
¶ 17 We review a trial court's judgment concerning questions of law by de novo review standard, without deference to the trial court's conclusion. In re A.N.O., 2004 OK 33, ¶ 3, 91 P.3d 646, 647. When making a determination of a child's eligibility for adoption without consent, an appellate court *1164 will review issues of fact under a clear and convincing standard. In re Adoption of C.D.M., 2001 OK 103, ¶ 13, 39 P.3d 802, 807. The burden is on the party seeking to adopt without consent to prove such adoption is warranted by clear and convincing evidence. Id. "Accordingly, the decision of the trial court will not be disturbed unless it fails to rest on clear and convincing evidence." Id.

ANALYSIS
¶ 18 Two grounds for adoption without consent were alleged by the Pearsons. First, the natural mother failed to provide support during the relevant period, and second, she did not establish and/or maintain a substantial and positive relationship with the minor child, G.D.J., during the same period. Subsections B and H of Section 7505-4.2 of Title 10 of the Oklahoma Statutes provide:
B. Consent to adoption is not required from a parent who, for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of a child or a petition to terminate parental rights pursuant to Section 7505-2.1 of this title, has willfully failed, refused, or neglected to contribute to the support of such minor:
1. In substantial compliance with an order entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support, or
2. According to such parent's financial ability to contribute to such minor's support if no provision for support is provided in an order. For the purposes of this section, support for the minor shall benefit the minor by providing a necessity. Payments that shall not be considered support shall include, but are not limited to:
a. genetic and drug testing,
b. supervised visitation,
c. counseling for any person other than the minor,
d. court fees and costs,
e. restitution payments, and
f. transportation costs for any person other than the minor, unless such transportation expenses are specifically ordered in lieu of support in a court order.
The incarceration of a parent in and of itself shall not prevent the adoption of a minor without consent.
H. 1. Consent to adoption is not required from a parent who fails to establish and/or maintain a substantial and positive relationship with a minor for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of the child.
2. In any case where a parent of a minor claims that prior to the receipt of notice of the hearing provided for in Sections 7505-2.1 and 7505-4.1 of this title, such parent had been denied the opportunity to establish and/or maintain a substantial and positive relationship with the minor by the custodian of the minor, such parent shall prove to the satisfaction of the court that he or she has taken sufficient legal action to establish and/or maintain a substantial and positive relationship with the minor prior to the receipt of such notice.
3. For purposes of this subsection, "fails to establish and/or maintain a substantial and positive relationship" means the parent:
a. has not maintained frequent and regular contact with the minor through frequent and regular visitation or frequent and regular communication to or with the minor, or
b. has not exercised parental rights and responsibilities.
In the present case, the fourteen-month period (relevant period) is from August 21, 2007, through October 21, 2008.
¶ 19 A parent's consent to an adoption is not required if the parent willfully fails, refuses, or neglects to contribute to the support of their minor child in substantial compliance with a court order or according to the parent's financial ability to contribute to the minor's support if no provision for support is provided in an order.[13] A parent's consent to *1165 adoption is also not required from a parent who fails to establish and/or maintain a substantial and positive relationship with the minor child.[14] This is defined as not maintaining "frequent and regular contact with the minor through frequent and regular visitation, or frequent and regular communication with the minor, or has not exercised parental rights and responsibilities."[15] The statute allows a defense to this requirement if, prior to the notice of the hearing on the application for adoption without consent, the parent can prove to the satisfaction of the court that he or she has taken sufficient legal action to establish and/or maintain a substantial and positive relationship with the minor child. Such action is based on the parent being denied the opportunity to have a relationship with the minor child due to the actions of the custodian. A parent may lose their right to consent to an adoption if either or both of these requirements are proven to the court by clear and convincing evidence.

FAILURE TO SUPPORT
¶ 20 Although Stubbs admits she was employed and had other resources over the relevant period she did not pay any money or provide any necessities to the Pearsons for G.D.J.'s care.[16] She asserts she had no duty to support because she was following a "no support" order in the paternity case which granted joint custody to the natural parents and stated "no support shall be owed by either Petitioner or Respondent."
¶ 21 This Court previously addressed a similar issue in Slover v. Smith, 1988 OK 119, 765 P.2d 1202. In Slover the natural parents of a two-year-old son were divorced in 1984. The mother received custody, and the father was ordered to pay support. Subsequently, the parents filed a joint motion to modify custody and a modification order was entered which placed custody in the father and "no child support [was] ordered payable by either party." This Court held:
A natural parent who pays no child support in reliance on a prior explicit judicial exoneration of any financial obligation is neither refusing substantially to comply with a court order nor becomes liable to provide support according to one's financial ability. . . (Emphasis Added)
¶ 22 The facts in the present case reveal there was no explicit order to pay support for the benefit of G.D.J. The Pearsons did not receive custody of G.D.J. until the trial court granted emergency custody on April 17, 2007. There was no order adjudicating Stubbs' duty of support until October 6, 2008, when she was ordered to pay Two Hundred and Three Dollars ($203.00) per month to the Pearsons.[17] Pearsons then filed, on October 21, 2008, their Application to Adjudicate the Minor Eligible for Adoption Without Consent of the Natural Mother alleging Stubbs' failure to support. In the present case, the trial court found clear and convincing evidence that she did not support G.D.J. according to her financial ability during the relevant period, and therefore granted the Pearsons Application to Adjudicate the Minor Eligible for Adoption Without Consent of the Natural Mother. We find the trial court erred in this finding. See Slover v. Smith, supra.

FAILURE TO ESTABLISH AND/OR MAINTAIN A SUBSTANTIAL AND POSITIVE RELATIONSHIP
¶ 23 Pearson initially obtained custody by virtue of an Emergency Custody Order entered on April 17, 2007, in CV 2007-159, originally filed by Pearson seeking a custody order under the provisions of 43 O.S. § 101 *1166 et seq. This emergency order was in effect until the October 6, 2008, final custody order and was silent as to visitation. The emergency order provided and authorized Pearson to "perform all necessary acts to care for the needs of this child, including but not limited to providing counseling, medical needs, enrollment of this child in school, and otherwise take any necessary steps to care and protect the child."
¶ 24 At trial on the Application to Adjudicate Minor Eligible for Adoption Without Consent of the Natural Mother, testimony was taken to show Stubbs had not established and/or maintained a substantial and positive relationship with G.D.J. during the relevant period. Pearson kept a calendar showing when Stubbs had contact with G.D.J. including phone calls made to her residence by Stubbs or other members of her family.
¶ 25 Stubbs asserted, during the relevant period, she had been denied visitation. It appears from the testimony and record that this occurred in March and/or April, July, and August of 2008. One denial of visitation occurred when Stubbs was in a drug rehabilitation facility, and the other when Stubbs was notified by the Kiowa County Health Department that she had a positive tuberculosis skin test and it was being evaluated.[18] Stubbs was also denied visitation another time because Pearson was concerned about the condition Stubbs seemed to be in on the phone and felt it was not in G.D.J.'s best interest to have visitation that day. The parties provided conflicting testimony about another time visitation was denied, either in March or April, when Pearson and Stubbs' mother had a heated argument. In March, Stubbs was allowed visitation, and during that visitation when she had possession of G.D.J., she was arrested at the court house in Greer County, Oklahoma.[19]
¶ 26 In his August 11, 2010, order addressing failure to maintain relationship, and again in his December 2, 2010, order, Judge Huey found, during the relevant period, Stubbs had contact with G.D.J. only thirteen times, and for seven months, she had no contact.[20] A majority of the contacts were arranged by Stubbs' mother and not Stubbs. The trial court found the contacts she had were neither positive nor substantial. During some of the contacts, G.D.J., was in the presence of convicted felons, one of whom was a registered sex offender, she caused G.D.J. to miss a birthday celebration at his daycare, she was arrested at a courthouse while in possession of G.D.J., and she had put G.D.J. at risk of exposure to communicable diseases. Also, during this time she had various criminal proceedings filed against her, along with outstanding bench warrants.[21] Her testimony that she was prohibited from visiting or contacting G.D.J. was not found credible by the trial court. Additionally, the trial court did not find any proof she had taken sufficient legal action to remedy any denied opportunities to establish and/or maintain a substantial and positive relationship with G.D.J.
¶ 27 Stubbs' attorney argues she took sufficient legal action because of the litigation involved in the CV 2007-159 custody case. Section 7505-4.2(H) of Title 10 of the Oklahoma Statutes requires a party to prove to the satisfaction of the court they took sufficient *1167 legal action against a denial of an opportunity to establish and/or maintain a substantial and positive relationship with the subject minor child by the custodian prior to the date of notice of the hearing on the adoption without consent. The record fails to demonstrate there was any action taken by Stubbs against the Pearsons during the relevant period based upon her being denied the opportunity to establish and/or maintain a substantial and positive relationship with G.D.J.
¶ 28 The trial court's findings that during the relevant period Stubbs did not maintain frequent and regular contact with the child through frequent and regular visitation or frequent and regular communication to or with the minor child, and further that she has not exercised her parental rights and responsibilities are clearly supported by the record. The trial court's conclusion, the Pearsons had established by clear and convincing evidence that Stubbs failed to establish and/or maintain a substantial and positive relationship with G.D.J., was likewise supported by the record.
¶ 29 We find no reason to disturb the trial court's finding that the Pearsons met their burden of proof that Stubbs failed to establish and/or maintain a substantial and positive relationship with G.D.J. over the relevant period, by clear and convincing evidence, and issuing an order granting the Application to Adjudicate the Minor Eligible for Adoption Without the Natural Mother's Consent.

ALLEGED ERRORS IN CV 2007-159 ARE NOT APPEALABLE
¶ 30 Stubbs asserts errors were made in the grandparental custody case, CV 2007-159, which was filed and remains pending at this time. She argues everything in FA 2008-24, the case currently on appeal, fails because of the mistakes made in CV 2007-159. The proceedings conducted in CV 2007-159 are relevant only to the extent the trial court granted the Appellees temporary custody in that proceeding and what, if any, legal action was taken to establish and/or maintain a substantial and positive relationship with G.D.J. As we have found above, there is no evidence during the relevant period that Stubbs ever sought sufficient legal action concerning any alleged denials of opportunities for her to establish and/or maintain a substantial and positive relationship with G.D.J. Arguments about alleged errors in CV 2007-159 are beyond the scope of this appeal.[22]

THE TRIAL COURT PROPERLY APPLIED THE INDIAN CHILD WELFARE ACT OF 1978 (25 U.S.C. §§ 1901 et seq.)

¶ 31 Stubbs asserts the trial court incorrectly applied the Indian Child Welfare Act of 1978 (ICWA). She argues: 1) the requisite burden of proof on all issues in an adoption without consent of a natural parent is "beyond a reasonable doubt" rather than "clear and convincing evidence,"; 2) an adoption without consent of a natural parent constitutes a termination of parental rights as contemplated by the ICWA and; 3) in the alternative, if an adoption without consent is determined not to constitute a termination of parental rights the testimony of an expert witness at the adoption without consent hearing should have been required and a "beyond a reasonable doubt" standard of proof should have been applied to the issues in Section 1912(f) of the ICWA.
¶ 32 Section 1912(f) of the ICWA provides:
(a). . . In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights . . .
(f) . . . No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence, beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is *1168 likely to result in serious emotional or physical damage to the child.
¶ 33 The issue, whether a proceeding to determine a minor eligible for adoption without consent of a natural parent, is a proceeding for termination of parental rights. Section 1903(1)(ii) of the ICWA in its definition of "child custody proceedings" defines "termination of parental rights" as ". . . any action resulting in the termination of the parent-child relationship." In subdivision (iv) of this same paragraph, Congress separately defined "adoptive placement" as "the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption."
¶ 34 A reading of the Oklahoma Adoption Code is relevant to a resolution of this question. In 1998, the Oklahoma Legislature added subsection B to Section 7505-4.1 of Title 10 of the Oklahoma Statutes.[23] Subsection B forbids combining a hearing on an application for adoption without consent with a hearing on the application for a final decree of adoption.[24] This subsection further distinguishes the hearing, on an application for adoption without consent, from an application to terminate parental rights of a putative father. Subsections E, I, and J of Section 7505-4.1 provide further:
E. At the hearing on an application to permit adoption without the consent or relinquishment of a parent, the court may determine whether the minor is eligible for adoption pursuant to Section 7505-4.2 of this title. At the hearing on an application to terminate the parental rights of a putative father, the court may, if it is in the best interests of the minor, determine that the consent of the putative father to the adoption of the minor is not required, and terminate any parental rights which the putative father may have, as provided in Section 7505-4.2 of this title.
I. 1. . . . b. An appeal from an order determining a child eligible for adoption which does not terminate parental rights may be taken in the same manner provided for appeals from the court as provided in this subsection. The failure of a parent to appeal from an order declaring a child eligible for adoption without consent of the parent which does not terminate parental rights shall not preclude such parent from asserting error in the order after the final decree is rendered.
2. In an appeal concerning the termination of parental rights for purposes of adoption pursuant to this section or from an order determining a child eligible for adoption which does not terminate parental rights pursuant to this section, the appellant's designation of record shall be filed in the trial court within ten (10) days after the date of the judgment or order. Appellee's counter designation of record shall be filed in the trial court ten (10) days after appellant's designation of record is filed in the trial court.
3. All appeals of cases concerning the termination of parental rights for purposes of adoption or an order determining a child eligible for adoption which does not terminate parental rights pursuant to this section shall be initiated by filing a petition in error in the Supreme Court within thirty (30) days of the filing of the order, judgment, or decree appealed from. The record on appeal shall be completed within thirty (30) days from the filing of the petition in error. Any response to the petition in error shall be filed within twenty (20) days from the filing of the petition in error . . .
J. Any appeal when docketed should have priority over all cases pending on said docket. Adjudication of appeals and any other proceedings concerning the termination of parental rights or the determination *1169 that a child is eligible for adoption without consent which does not terminate parental rights pursuant to this section shall be expedited by the Supreme Court.
(Emphasis Added)
¶ 35 By the very language of these subsections, only in a termination case of a putative father's parental rights, can a trial court simultaneously find consent is unnecessary, and terminate such rights. This is distinguished from a determination that a child is eligible for adoption without consent, which does not terminate parental rights.
¶ 36 Section 1912 of the ICWA requires the use of a "beyond a reasonable doubt" standard of proof, for certain purposes, in a proceeding to terminate parental rights. As discussed above, our statutes prohibit a trial court from taking any action that results in a termination of the parent-child relationship in a proceeding to determine a minor child eligible for adoption without the consent of a natural parent. Therefore, a "clear and convincing" standard of proof is all that is necessary in such a proceeding. The higher standard of proof is relevant to the specific determination, the continued custody of the child by the parent or Indian custodian, is likely to result in serious emotional or physical damage to the child. The hearing on the petition for adoption, which has not occurred in the present case, will be a proceeding which may result in the termination of a parent-child relationship, and is the only proceeding in which the court may grant a final decree of adoption. At the hearing on the petition for adoption, evidence relevant to matters included in subsection (f) of Section 1912 must be proven "beyond a reasonable doubt" in order to support a determination that parental rights should be terminated, including the testimony of an expert witness.
¶ 37 In Merrell v. Merrell, 1985 OK 107, 712 P.2d 35, this Court considered the procedures of 10 O.S. Supp.1975 Section 60.7, the predecessor to the provisions of 10 O.S.2001, Section 7505-4.1. This Court determined "that it is the parental right of consent, rather than the absolute termination of all parental ties to the child, at issue in a section 60.7 hearing, we still . . . find the clear and convincing evidence standard . . . to be proper."[25] This position was reiterated in In the Matter of the Adoption of J.R.M. 1995 OK 79, ¶ 17, 899 P.2d 1155, 1161, wherein this Court stated:
. . . Absolute termination of parental rights is not decided at the time the consent issue is determined. Only when the final decree of adoption is entered are all parental responsibilities severed . . .
¶ 38 For the reasons stated above, we again find that a hearing on eligibility for an adoption without consent is not a termination proceeding. We further find the "beyond a reasonable doubt" standard of proof is only applicable for the purposes of 25 U.S.C. § 1912(f). Accordingly, the trial court applied the correct standard of proof at the hearing on the application to adjudicate minor *1170 eligible for adoption without consent of the natural mother.

THE TRIAL COURT HAD SUBJECT-MATTER JURISDICTION
¶ 39 Stubbs next asserts the trial court lacked subject-matter jurisdiction to hear the eligibility for an adoption without consent because another adoption case (FA 2009-24) in the same jurisdiction had already granted eligibility for an adoption without consent. FA 2009-24 is a second petition for adoption filed by the Pearsons in Jackson County and remains pending before the same judge. It involves the same parties and minor child and sought an order determining G.D.J. eligible for adoption without consent of the natural mother. On November 18, 2009, the trial court entered a default order, in FA 2009-24, adjudicating the minor eligible for adoption without consent of the natural mother.[26] The trial court found the natural mother had failed to support the minor child for a period of twelve consecutive months out of the last fourteen months immediately preceding the filing of the petition for adoption of G.D.J. Stubbs argues it is a legal impossibility for a natural parent to lose their ability to consent to adoption more than once on the same child and the trial court erred in failing to dismiss for want of subject-matter jurisdiction.[27] Therefore, the trial court had no real ability to adjudicate a right previously lost, and thus lacked subject-matter jurisdiction.
¶ 40 We disagree. The determination of eligibility for an adoption without consent is solely based on a limited time frame. Once a petition is filed, the relevant time period is set by the provisions of 10 O.S. Supp.2007, Section 7505-4.2(B) and (H). The evidence necessary to prove whether an adoption may proceed without a natural parent's consent cannot deviate from the "twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of a child . . ." This evidence must show, during this relevant period, either the natural parent willfully failed, refused, or neglected to contribute to the support of such minor child, or failed to establish and/or maintain a substantial and positive relationship with the minor child. The evidence necessary to prove whether consent is necessary will concern a different timeline. Although confusing in the present case, it would appear the Appellees felt compelled to define a second timeline within which they allege the natural mother failed to support G.D.J. Such determination alone will not bar a court from subject-matter jurisdiction over the first alleged timeline.[28] The trial court did not commit reversible error, as alleged, by prohibiting Appellant from presenting evidence concerning case number FA 2009-24.
¶ 41 Appellant additionally asserts the trial court did not have subject-matter jurisdiction because the Appellees failed to satisfy the provisions of the Oklahoma Adoption Code, 10 O.S. Supp.2005, Section 7502-1.1 (C)-(E)(2). Appellants "candidly" admit the Appellees satisfied the jurisdictional requirements of 10 O.S. Supp.2005, Section 7502-1.1(A)(1)(a). The argument appears to be, the failure of the Appellees to satisfy irrelevant provisions of Section 7502-1.1(C)-(E)(2), somehow deprived the trial court of subject-matter jurisdiction. This argument is without merit. These subsections provide certain restrictions on jurisdiction when another court of this state has jurisdiction in a deprived action or when a custody or adoption proceeding is pending in a court of another state. No party asserts there is any other action pending in any other jurisdiction either within Oklahoma or without Oklahoma other than the previously mentioned case, FA-2009-24. Any failure to specifically *1171 make findings of the lack of any other pending matter is harmless at best.
¶ 42 The trial court had jurisdiction pursuant to subparagraph a of paragraph 1 of subsection A of Section 7502-1.1. The statute provides:
A. Except as otherwise provided in this section, a court of this state has jurisdiction over proceedings to terminate parental rights and proceedings for the adoption of a minor commenced pursuant to the Oklahoma Adoption Code if:
1.a. Immediately preceding commencement of the proceeding, the minor lived in this state with a parent, a guardian, a prospective adoptive parent, or another person acting as parent, for at least six (6) consecutive months, excluding periods of temporary absence,
¶ 43 The Pearson's Petition for Adoption in the present action established the necessary facts for jurisdiction. This Court has consistently held subject-matter jurisdiction is invoked by the pleadings filed and where such pleadings state a case over which the jurisdiction of the court extends, then jurisdiction will attach, and the court has the power to hear and determine the issues.[29] We find the trial court has jurisdiction over the subject matter of this case and the Pearsons' Petition sufficiently invoked that jurisdiction.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
¶ 44 Stubbs next argues the trial court failed in its August 11, 2010, and December 2, 2010, orders to make findings of fact and conclusions of law contrary to the provisions of 12 O.S.2001, Section 611.[30] This Court has previously held "it is not prejudicial error in every case to deny a request for a separate finding of fact for the court is not bound to make separate findings concerning immaterial facts, nor is the court bound to find material facts in greater detail than necessary for a correct decision of questions of law involved in the case in the event the action is reviewed by a higher court."[31] The object of 12 O.S. § 2001, 611 "is to enable the parties to have placed on the record the facts upon which the rights litigated depend, as well as the conclusions of law which the court drew from the facts found, so that exception may be taken to the views of the trial court as to the law involved in the trial."[32] The findings of fact and conclusions of law, although not specifically designated as such in the orders, were sufficient to present the issues to this Court on appeal and failure to separately designate them also did not amount to prejudicial error.[33]

*1172 THE ORDER OF AUGUST 11, 2011, AND THE DECEMBER 2, 2010, ORDER WERE SUFFICIENT TO CONSTITUTE APPEALABLE ORDERS
¶ 45 Appellant additionally asserts the trial court was without jurisdiction to issue the order of December 2, 2010, following her filing of an appeal with this Court concerning both August 11, 2010, orders.[34] She states the trial court exceeded its jurisdictional authority, under Supreme Court Rule 1.37(a), in hearing and granting the Appellees' Motion and/or Amended Motion to Settle Journal Entry.[35] Her contention is the December 2, 2010, Order Adjudicating Minor Eligible for Adoption Without Consent of the Natural Mother made findings of subject-matter jurisdiction not previously made by the trial court in the August 11, 2010, orders. On December 13, 2010, we held the August 11, 2010, orders were appealable orders and allowed any party aggrieved by the decision on the Motion to Settle Journal Entry to file a supplemental petition in error which did occur in this case. Because the August 11, 2010, orders are valid appealable orders we find Appellant's arguments concerning the December 2, 2010, Order Adjudicating Minor Eligible for Adoption Without Consent Of The Natural Mother to be moot *1173 and no further consideration is necessary by this Court. For all of the above reasons we affirm in part and reverse in part the judgment of the district court and the adoption may proceed.

JUDGMENT OF THE DISTRICT COURT AFFIRMED IN PART; REVERSED IN PART; THE ADOPTION PROCESS MAY PROCEED.
¶ 46 ALL JUSTICES CONCUR.
NOTES
[1] 10 O.S. Supp.2007, § 7505-4.2(B) & (H)
[2] Appellant claims the trial court erred in not transferring the case to tribal court. On March 16, 2009, Stubbs filed The Natural Mother's Motion Requesting Transfer to Tribal Court. Attached to her motion was an affidavit of Billye Leitka, an Indian Child Welfare Specialist for the Seminole Nation of Oklahoma. Billye stated the tribe had not requested a transfer but would be receptive if one was requested. Appellees responded citing § 1911 of the ICWA which states "in the absence of good cause to the contrary, [state court] shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent". A hearing was held on May 5, 2009. Billye Leitka testified via telephone and Brantley Jones, the natural father and son of Pearson, testified in person. Billye said it was her understanding that if a parent objects, the tribe would not accept a transfer. Brantley objected to the transfer. The trial court then correctly held that the federal law does not allow a transfer to tribal court if a parent objects to such transfer.
[3] The Oklahoma Indian Child Welfare Act (10 O.S. § 40, et seq.); Indian Child Welfare Act of 1978 (25 U.S.C. §§ 1901 et seq.).
[4] The FA 2009-24 case was filed by the Appellees in the same court on October 19, 2009, and sought an adoption without consent concerning a different timeline against the Appellant regarding G.D.J.
[5] Transcript of the Proceedings held on March 10, 2010, page 11. The custody case is case number CV 2007-159 before the same court. The Answer Brief was corrected to note these criminal charges were not drug-related.
[6] August 21, 2007-October 21, 2008 (relevant period) is the fourteen-month period prior to the filing of the Petition for Adoption which is used in evaluating adoption without consent cases pursuant to 10 O.S. Supp.2007, § 7505-4.2.
[7] Transcript of the Proceedings held on March 10, 2010, page 137.
[8] CV 2006-335 was a case filed to determine custody of G.D.J. between Tessia Stubbs and Brantley Jones. Joint custody was awarded on October 18, 2006, and "no support" was ordered to be paid by either party to the other.
[9] Transcript of the Proceeding held on March 31, 2010, pages 142 and 157.
[10] Case No. 108,889.
[11] The correct citations are 10 O.S. Supp.2007, Section 7505-4.2(B) and (H) not 7507-4.2(B) and (H).
[12] The second Petition in Error was assigned to Case No. 109,018.
[13] 10 O.S. Supp.2007, Section 7505-4.2(B)
[14] 10 O.S. Supp.2007, Section 7505-4.2(H).
[15] 10 O.S. Supp.2007, Section 7505-4.2(H)(3)(a) &(b).
[16] Transcript of the Proceeding held on March 31, 2010. Stubbs testified during the relevant period she was a certified nursing assistant. Id. at page 163. She was employed for a little over a month but lost her CNA job when she was charged with possession of a controlled dangerous substance. She testified she may have had other jobs during the relevant period and was able to work. Id. at page 164. Further she said she had money she used to buy illegal drugs Id. at page 166. She also testified her living expenses were paid by her parents and her father would give her money periodically. Id. at pages 164-165.
[17] Case No. CV 2007-159, Jackson County, Oklahoma.
[18] Kiowa County Health Department Taberculin Skin Test (TST) Screening Health Certificate (Petitioner's Exhibit 21).
[19] Transcript of the April 14, 2010, hearing at pages 14-15.
[20] The thirteen were total contacts including Stubbs' visitation of G.D.J. and telephone contact. The months where the court found that there was no contact were, November 2007, April 2008, and June through October 2008. Respondent's Exhibit 11 (marked Defendant's Exhibit 11) indicated she didn't call in April 2008, because she was in jail in Greer County. Two of these months, July and August 2008, visitation was denied. In July 2008, Stubbs asked to see G.D.J. before she went into drug rehabilitation treatment. Pearson refused because she wanted proof Stubbs was not at risk of exposing G.D.J. to tuberculosis. In August, 2008, Stubbs asked Pearson to bring G.D.J. to the drug rehabilitation center. Pearson refused because she didn't think it was a good environment for G.D.J. and would be confusing for him. Later that same month Pearson set up visitation but Stubbs cancelled it.
[21] The warrants were in the following cases: District Court of Greer County, Oklahoma, Case No. CM XXXX-XXXXX and CM XXXX-XXXXX; Municipal Criminal Court of the City of Norman, Oklahoma, Case No. 2007-02132.
[22] An appeal of a judgment, decree, or appealable order must be commenced by filing a petition in error with the Clerk of Supreme Court of Oklahoma within thirty (30) days from the date of such judgment, decree, or appealable order. 12 O.S. Supp.2002, § 990A.
[23] HB 2829 (1998), 2nd Regular Session of the Forty-Sixth Legislature; 1998 Okla.Sess.Laws c. 415, § 20. The predecessor to this language is found in 10 O.S. Supp. 1975, § 60.7, which was repealed in 1997, Okla.Sess.Laws, ch. 366, § 60.
[24] "B. A hearing on an application for adoption without consent or an application to terminate parental rights cannot be combined with the hearing on the application for a final decree of adoption. For good cause shown, a hearing on the application for a final decree of adoption may be heard as early as the same day as a hearing on an application to terminate parental rights, without prejudice to the rights of any parties to appeal from the order terminating parental rights."
[25] This Court and subsequent opinions of different Divisions of the Oklahoma Court of Civil Appeals have found a hearing on the eligibility for an adoption without consent does not affect a termination of parental rights. Also see, the concurring opinion of Lavender, J., with whom Opala, J., joins, upholding the decision in Merrell; In the Matter of the Adoption of K.D.K, 1997 OK 69, 940 P.2d 216. The Court of Civil Appeals in Adoption of D.R.W., 1994 OK CIV APP 10 (Div.III), 875 P.2d 433, found that "[h]owever, obviously, in a consentless adoption the parent-child bond is materially altered. We fail to see a material distinction where the child's rights are considered." Id. at ¶ 7, pg. 435. This same Division, (Division III), later agreed with this Court's holding in Merrell v. Merrell, 1985 OK 107, 712 P.2d 35, that "an order determining a child eligible for adoption without consent of a parent does not result in a termination of that parent's parental rights." In the Matter of the Adoption of R.L.A., 2006 OK CIV APP 138 ¶ 23, 147 P.3d 306, 311. This same court went further and said "we need not determine, at this time, whether such an order, or even a final order for adoption is a `termination of parental rights' as contemplated by 25 U.S.C. § 1912(d) and § 1912(f)." R.L.A. also held the only reasonable interpretation of 25 U.S.C. § 1912(f) is the "beyond a reasonable doubt" standard of proof only applies to the specific issues in that section. Id. at ¶ 14, page 310. In 2008, Division I of the Oklahoma Court of Civil Appeals agreed with R.L.A. in that the heightened standard of proof, only applies to the factual determination required by 25 U.S.C. § 1912(f) to be made in ICWA termination cases and the state law mandated burden of proof of "clear and convincing evidence" applies to all other state law requirements for termination. In the Matter of J.S., 2008 OK CIV APP 15, ¶ 4, 177 P.3d 590, 591. We agree with those findings.
[26] Appellant's Exhibit 12 (entitled Defendant's Exhibit 12).
[27] Stubbs filed a Motion to Dismiss in FA 2008-24 on November 19, 2009. A hearing on the Motion to Dismiss was had on December 16, 2009, and the trial court denied the motion in an Order entered December 18, 2009.
[28] It should be noted the trial court granted a default order on the application to adjudicate minor eligible for adoption without consent in FA-2009-24 prior to the trial court granting the orders in the present case now on appeal. No appeal was taken from the order entered in FA-2009-24.
[29] In Re: A.N.O., A Minor Child, 2004 OK 33, ¶ 9, 91 P.3d 646, 649; State ex rel. Turpen v. A 1977 Chevrolet Pickup Truck, 1988 OK 38, 753 P.2d 1356; Flick v. Crouch, 1967 OK 131, 434 P.2d 256; and Metzger v. Turner, 1945 OK 149, 195 Okla. 406, 158 P.2d 701.
[30] Title 12 O.S.2001, § 611. "Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its findings, except generally, for the plaintiff or defendant, unless one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state, in writing, the findings of fact found, separately from the conclusions of law." Stubbs timely made a written request for findings of fact and conclusions of law prior to the trial. She also made an oral and timely motion requesting findings of fact and conclusions of law for the decisions to be rendered on the Appellees' Motion and Amended Motion to Settle Journal Entry, Transcript of the Proceedings on November 29, 2010, page 1, lines 22-25; page 2, lines 1-3. The trial court declined to make further findings of fact and conclusions of law in its Order of December 2, 2010. See ¶ 15 of this opinion.
[31] Davis v. School Dist. No. D-14, LeFlore County, 1981 OK 24, ¶ 5, 625 P.2d 630, 632; Tulsledo Oil Company v. State, 1963 OK 233, ¶ 17, 386 P.2d 161, 165; Reed v. Richards & Conover Hardware Co., 1941 OK 21, ¶ 6, 188 Okla. 452, 110 P.2d 603, 604; Mistletoe Express Service v. United Parcel Service, Inc., 1983 OK 27, ¶ 3, 674 P.2d 1, 3.
[32] Messinger v. Messinger, 1958 OK 296, ¶ 5, 341 P.2d 601, 604; Mistletoe, Id.
[33] Although Court of Civil Appeals opinions are not precedential unless approved for publication by the Supreme Court, see, 20 O.S.2001, § 30.5 and Rule 1.200(c)(2), Oklahoma Supreme Court Rules, 12 O.S.2001, Ch. 15, App.1, we agree with the findings of the Court of Civil Appeals in Newell v. Nash, 1994 OK CIV APP 143, ¶ 16, 889 P.2d 345, 349, that without a showing of a benefit or prejudice to either party, prejudicial error will not be found merely because the conclusions of law are not so identified nor separated from the findings of fact. As in Newell, the trial court separately numbered and stated each finding/conclusion.
[34] Stubbs filed her Petition in Error in case number 108,889 on November 5, 2010. The final Order Adjudicating Minor Eligible for Adoption Without Consent of the Natural Mother was filed on December 2, 2010. On August 11, 2010, the trial court had issued an Order Addressing Failure to Support and an Order Addressing Failure to Maintain Relationship. The trial court stated in another December 2, 2010, Order that found the August orders were erroneously entitled "orders" and were actually the findings of fact and conclusions of law requested by the natural mother. See ¶ 15 of this opinion. Appellees' filed with this Court a Motion to Dismiss Appeal on November 12, 2010. This Court issued an Order on December 13, 2010, finding the August 11, 2010, orders were final appealable orders determining the minor child could be adopted without the consent of the mother. We further stated a party may file a Supplemental Petition in Error if they are aggrieved by any order filed by the trial judge which decides the Appellees' Motion to Settle Journal Entry. Stubbs subsequently filed a Supplemental Petition in Error and a Petition in Error (case no. 109,018) on December 16, 2010. The two appeals were consolidated on December 21, 2010.
[35] Rule 1.37, Oklahoma Supreme Court Rules, 12 O.S.2001, Ch. 15, App.1.

(a) Trial Court Jurisdiction.
After a petition in error has been filed, the trial court retains jurisdiction in the case for the following purposes:
(1) To facilitate the completion of the record and allocate the costs of its preparation.
(2) To grant or modify orders in regard to custody, guardianship, support, and maintenance.
(3) To decide motions for a new trial which assert grounds that are provided by 12 O.S. 1991 § 655 or a motion or petition for relief on grounds provided for by 12 O.S.1991 § 1031 and 12 O.S.Supp.1993 § 1031.1.
(4) To decide motions in regard to staying the enforcement of judgments, decrees or final orders or of interlocutory orders appealable by right, whether subject to stay of enforcement as a matter of statutory right, or subject to a discretionary stay order.
(5) In matrimonial litigation, to award attorney's fees for services rendered or to be rendered in connection with the appeal, to award alimony pending the appeal or to issue orders affecting the custody of children or the property of the parties pending the appeal. Jones v. Jones, 612 P.2d 266 (Okla.1980).
(6) To change the status of a litigant from that of next friend to guardian ad litem, or to appoint an attorney for such litigant and to impound funds that are in dispute.
(7) To take action with respect to any issue collateral to a pending appeal.
(8) To determine any matter ordered by the Supreme Court.
(9) To determine any issue whose resolution pending appeal is explicitly authorized by law.
(10) When the parties to a cause pending on appeal or on certiorari have agreed to a settlement of the claim and their agreement requires the trial court's approval, the parties may file in the Supreme Court a joint motion (a) for an order staying further proceedings for a period to be specified and (b) for leave to proceed before the trial court to secure approval of the settlement. If settlement is approved, a certified copy of the trial court's order attached to a joint motion should then be brought in this court for dismissal of the appeal or certiorari. An approved settlement need not and shall not be submitted for this court's review in the pending appeal. If a dispute should arise over the correctness of the trial court's settlement approval or over any of its terms, and corrective relief be sought, it must be by a timely-perfected appeal form (sic) the trial court's order that resolved the parties' settlement dispute. Goldman v. Goldman, 883 P.2d 164 (Okla.1994). . .