IN THE MATTER OF THE ADOPTION OF: S.L.D.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF THE ADOPTION OF: S.L.D.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF THE ADOPTION OF: S.L.D.
2019 OK CIV APP 19
437 P.3d 205
Case Number: 116550
Decided: 07/31/2018
Mandate Issued: 03/27/2019
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2019 OK CIV APP 19, 437 P.3d 205

 

IN THE MATTER OF THE ADOPTION OF: S.L.D., Minor Child.

JESSICA DAVIS, Appellant,
v.
MARCY DAVIS, Appellee.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE KURT GLASSCO, TRIAL JUDGE

REVERSED

Becki A. Murphy, Megan D. Martin, MURPHY FRANCY PLLC, Tulsa, Oklahoma, for Appellant

Christopher Brecht, PERRINE, REDEMANN, BERRY, TAYLOR & SLOAN, Tulsa, Oklahoma, Guardian Ad Litem for Natural Mother

Catherine Z. Welsh, Jim C. McGough, Rachel J. Ellsworth, WELSH & MCGOUGH, PLLC, Tulsa, Oklahoma, for Appellee

Angela Monroe, ASSISTANT PUBLIC DEFENDER, TULSA COUNTY PUBLIC DEFENDER'S OFFICE, Tulsa, Oklahoma, for Minor Child

P. THOMAS THORNBRUGH, CHIEF JUDGE:

¶1 In this appeal, Jessica Davis (Mother), the natural mother of S.L.D. (Child), seeks review of a trial court order declaring Child eligible for adoption without Mother's consent pursuant to 10 O.S.2011 § 7505-4.2(H) on grounds that Mother failed to maintain a substantial and positive relationship with Child. Based on our review of the record, the parties' briefs, and the applicable law, we find that the judgment that Mother's consent is unnecessary pursuant to subsection (H) is not supported by clear and convincing evidence under the facts presented. We reverse the order below.

BACKGROUND

¶2 Many of the underlying facts are not disputed. Child's father, Bo Ryan Davis (Father), and Mother were married when Child was born but have been divorced since February 2010, when Child was about two years-old. The consent decree of divorce granted Father sole custody of Child, and allowed supervised visitation by Mother during the initial months following the decree; however, it contemplated that the parties might eventually enter into a joint child custody plan if certain conditions were met. Appellee, Marcy Davis (Stepmother), has been married to Father since July 2011.

¶3 On October 4, 2016, Stepmother filed a petition to adopt Child. She simultaneously filed an application to determine Child eligible for adoption without Mother's consent (AWOC), alleging that "for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing" of the petition for adoption, Mother had failed to establish and/or maintain a substantial and positive relationship with Child. See 10 O.S.2011 § 7505-4.2(H)(1). The parties agree that the 14-month relevant time period, pursuant to this provision, is August 4, 2015, through October 4, 2016 (relevant time period).

¶4 It is undisputed that notice of Stepmother's adoption proceeding was not served on Mother until November 11, 2016, but that Mother had filed, on October 25, 2016, a motion to enforce visitation in the divorce case. For approximately two years prior to Stepmother's filing of the adoption petition, Mother had been barred by a protective order, obtained by Father in September 2014, from contacting Child in any manner.

¶5 Though Father challenges the relevance of Mother's mental condition to this appeal, the record also shows as undisputed that from February 29, 2016, through August 11, 2016, Mother was involuntarily committed to a federal prison hospital undergoing treatment for mental illness. The commitment came after she was deemed incompetent for trial on federal charges related to violating the terms of her probation following her conviction in federal court of conspiracy to manufacture and pass counterfeit obligations.[1]

¶6 In April 2017, the district court appointed a guardian ad litem (GAL) for Mother at the request of Mother's counsel, who expressed concerns as to Mother's competency and ability to communicate. Stepmother then amended her AWOC application, adding grounds pursuant to § 7505-4.2(B)(2), that Mother had "willfully failed, refused and neglected" to contribute to Child's support during the relevant time period "according to [Mother's] financial ability" to do so; and pursuant to § 7505-4.2(L), that Mother has "a mental illness or mental deficiency" rendering her unable to properly exercise her parental responsibilities.

 

¶7 Trial occurred in October 2017. The trial court took judicial notice of the parties' consolidated divorce and protective order case. The docket sheet in that matter reveals considerable post-decree activity by both the parties and the district court, including an order granting Father's motion to modify visitation to require that Mother's visitation be supervised by a licensed professional at Mother's expense; two motions by Mother seeking to enforce visitation (the latest being her October 25, 2016 motion); a September 2014 motion by Father to require Mother to have a mental health evaluation; and a court minute indicating Mother's agreement to have the evaluation performed at her own expense. The current status of Mother's motions to enforce in the divorce case is not clear. Though not entirely clear from the record, Mother apparently has not had the mental evaluation requested by Father that is the subject of the court minute.

¶8 Mother admitted she had not had any contact with Child during the relevant time period. She stated she had had a mental "breakdown" in September 2014 and was hospitalized for her mental condition by the federal court for six months, beginning sometime in February 2016 until August 2016. She was eventually tried in federal court on the charges related to violating probation and was released with an ankle monitor. She recognized that the 2014 protective order obtained by Father remained in effect during the same time period. She stated she knew it could be modified, however, and as a result, in October 2016 she filed, on her own behalf, a motion seeking to enforce her visitation rights.

¶9 Neither party offered expert testimony. During Mother's cross-examination in Stepmother's case in chief, however, Mother presented copies of two forensic mental health evaluations from federally-employed forensic psychologists to support her testimony that she had been hospitalized by the U.S. Department of Justice's Federal Bureau of Prisons due to her incompetency to stand trial in the federal case. The forensic evaluations reflect she was detained for six months during the 12 months period immediately preceding the adoption petition's filing. The trial court initially admitted the reports "under advisement," over Stepmother's objection that the reports were inadmissible hearsay. The court ultimately denied admission of the evaluations, however, after denying Mother's demurrer to the evidence,[2] and later refused Mother's GAL's request to reconsider the exclusion. At that time, the trial judge also recognized as "uncontroverted" that Mother had "various mental health diagnosis [sic]" and that she was both incompetent and competent during portions of the relevant time period.[3] During closing arguments, Stepmother withdrew § 7505-4.2(L) as a ground for her AWOC application.

¶10 At the conclusion of the trial the trial judge stated that while it "appears . . . that [Mother] does have significant mental health issues . . . the evidence is in conflict about what action she took during the relevant time period." The court deemed Child eligible for AWOC pursuant to 10 O.S.2011 § 7505-4.2(H) alone, finding Stepmother had shown by clear and convincing evidence that Mother "failed to exercise parental rights and duties over [Child], including failure to establish and/or maintain a substantial and positive relationship" during the relevant time period.[4] The court's order did not address Mother's mental condition or the motion to enforce visitation she filed prior to being served with the petition to adopt Child, however. Mother filed this appeal.

STANDARD OF REVIEW

¶11 When reviewing a trial court's decision declaring a child eligible for adoption without the consent of the biological parent, this Court reviews issues of fact under a "clear and convincing standard." In re Adoption of G.D.J., 2011 OK 77, ¶ 17, 261 P.3d 1159 (citing In re Adoption of C.D.M., 2001 OK 103, ¶ 13, 39 P.3d 802). "The burden is on the party seeking to adopt without consent to prove such adoption is warranted by clear and convincing evidence. Accordingly, the decision of the trial court will not be disturbed unless it fails to rest on clear and convincing evidence." Id. As to questions of law, however, we review the trial court's judgment de novo. Id. Statutory interpretation presents a question of law. In re A.N.O., 2004 OK 33, ¶ 3, 91 P.3d 646.

ANALYSIS

¶12 Not surprisingly, the focus of argument on appeal is Mother's mental health. The essential issues presented are (1) whether the trial court correctly interpreted and applied 10 O.S.2011 § 7505-4.2(H) to Mother's situation; (2) whether the court was required to apply § 7505-4.2(L) in this case; and (3) whether Stepmother sustained her burden of producing clear and convincing evidence Mother's consent to Child's adoption is not necessary pursuant to § 7505-4.2(H). We hold that (1) the trial court misconstrued subsection (H) by including -- within the statutory "twelve (12) consecutive months out of the last fourteen (14) months immediately preceding" the adoption petition's filing -- the six months when Mother was adjudicated legally and mentally incompetent; (2) the district court is not restricted to applying only subsection (L) any time the parent in question has been diagnosed with a mental illness or deficiency; and (3) the order deeming Child eligible for adoption without Mother's consent is not supported by clear and convincing evidence, and must be reversed.

¶13 Pursuant to 10 O.S. § 7505-4.2(H):

1. Consent to adoption is not required from a parent who fails to establish and/or maintain a substantial and positive relationship with a minor for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of the child.

2. In any case where a parent of a minor claims that prior to the receipt of notice of the hearing provided for in Sections 7505-2.1 and 7505-4.1 of this title, such parent had been denied the opportunity to establish and/or maintain a substantial and positive relationship with the minor by the custodian of the minor, such parent shall prove to the satisfaction of the court that he or she has taken sufficient legal action to establish and/or maintain a substantial and positive relationship with the minor prior to the receipt of such notice.

3. For purposes of this subsection, 'fails to establish and/or maintain a substantial and positive relationship' means the parent:

a. has not maintained frequent and regular contact with the minor through frequent and regular visitation or frequent and regular communication to or with the minor, or
b. has not exercised parental rights and responsibilities.

Also pertinent here is § 7505-4.2(L), which states:

L. Consent to adoption is not required from:

1. A parent who has a mental illness or mental deficiency, as defined by paragraphs f and g of Article II of Section 6-201 of Title 43A of the Oklahoma Statutes, which renders the parent incapable of adequately and appropriately exercising parental rights, duties and responsibilities;

2. The continuation of parental rights would result in harm or threatened harm to the minor; and

3. The mental illness or mental deficiency of the parent is such that it will not respond to treatment, therapy or medication and, based upon competent medical opinion, the condition will not substantially improve.

¶14 Comparing the definitions of mental illness and mental deficiency in 43A O.S.2011 § 6-201, art. II (f) and (g),[5] with the contents of the forensic evaluations submitted in the trial court, it is clear, as the trial court recognized, that for at least six months of the relevant time period, Mother had a mental deficiency or illness rendering her incapable of appropriately exercising her parental rights and duties. In addition, her condition fits the definition of a "mentally incompetent person" under 43A O.S.2011 & Supp. 2017 § 1-103(12)("Mentally incompetent person" means "any person who has been adjudicated mentally or legally incompetent by an appropriate district court"), and Mother was in fact involuntarily committed for treatment during that time. Oklahoma has long recognized, as a matter of public policy and state statute, that after an individual's incapacity or incompetency has been judicially determined, "a person of unsound mind can make no conveyance or other contract, nor designate any power, nor waive any right, until his restoration to capacity is judicially determined." 15 O.S.2011 § 24. This provision has been described as one by which the state, "for the protection of its incompetents," has deemed any "civil acts transacted by a person" after they were determined to be incompetent void as a matter of law. National Life Ins. Co. v. Jayne, 132 F.2d 358, 361 (10th Cir. 1942)(citing 15 O.S.1941 § 24 and Groenewold v. Groenewold, 1943 OK 391, 144 P.2d 965).

¶15 Mother contends that her recognized mental illness or deficiency required as a matter of law that the trial court proceed only under the statutory provision specifically targeted toward a parent who has a mental illness or mental deficiency, in § 7505-4.2 (L), rather than the more general provision in subsection (H). Mother argues that her mental condition essentially is the only relevant factor here, and that the trial court was required to use subsection (L) rather than subsection (H) once Mother's mental illness/deficiency became clear. She makes a cogent argument that the analysis used by the Oklahoma Supreme Court in the recent decision, In re B.K., 2017 OK 58, 398 P.3d 323, supports her contention that the Oklahoma Legislature intended and due process requires that subsection (L) exclusively must be used to forego parental consent to the adoption of a child of a mentally ill or deficient parent.

¶16 Stepmother, on the other hand, contends Mother's mental condition is wholly irrelevant and that the trial court correctly applied and interpreted subsection (H), which makes no requirement of intention or willfulness in determining whether a parent has failed to maintain a substantial and positive relationship with a child. Stepmother points to the fact that, prior to 2001, subsection (H) required proof that a parent "willfully" failed to maintain a substantial and positive relationship. She contends, in essence, that when the Legislature removed the willfulness requirement, it intended to recognize that a parent's duty to maintain a relationship is of utmost importance, regardless of the parent's capacity or intent, or the willfulness of the conduct. Stepmother argues "the best interest of the child" is served when adoption proceeds in an "orderly and expeditious" fashion that does not delay permanency indefinitely, as Stepmother sees what Mother is attempting to do. Stepmother further argues that a potential adoptive parent should not be required to bear the expense of proving the requirements of subsection (L).

¶17 Stepmother's argument overlooks the public policy and due process concerns that Oklahoma recognizes as applicable to persons who have been adjudged mentally incompetent and incapable of handling their own affairs. Though in 2001 the Legislature removed "willfully" from subsection (H) and added subsections (H)(2) and (H)(3) to the statute, we do not interpret these changes as evincing legislative intent to override the general public policy of protecting persons who lack the capability of comprehending the significance of their actions or failure to act. Simply removing the term 'willful' does not equate to removing the presumption that a parent who fails to establish or maintain a substantial relationship is competent to choose to act otherwise, particularly when the failure to act will compromise the parent's recognized constitutional rights in the parent-child bond. See Moody v. Voorhies, 475 P.2d 579 (Oregon 1970)(biological father's commitment to mental hospital during year before adoption petition filed could not be used to support claim that he had abandoned the father-son role).

¶18 At the same time, however, we disagree with Mother's contention that a person (such as Stepmother) seeking to adopt a child without parental consent must exclusively rely on §7505-4.2(L) in any case involving a biological parent who has a mental illness/deficiency. In In re B.K., 2017 OK 58, 398 P.3d 323, the Court made clear that situations may, and do, exist where it is inappropriate or unwise to exclusively require the use of a mental health statutory provision to terminate the rights of a mentally ill parent. Despite Mother's cogent analysis distinguishing In re B.K., we reject that analysis here. The fact that Mother may have been mentally ill or deficient at one point, or multiple points, in time does not set in stone the proper AWOC procedure for all time. We therefore reject Mother's argument on this point.

¶19 We hold only that we decline to read subsection (H) as Stepmother argues and as the trial court applied it. We find, instead, that the six-month period when Mother was adjudicated incompetent and was involuntarily committed interrupted the relevant time period. The clear and convincing evidence therefore did not support the trial court's finding that Mother engaged in the requisite conduct to render her consent unnecessary under subsection (H). The court's decision finding Child eligible for adoption without Mother's consent pursuant to § 7505(H) is therefore is reversed.[6]

 

CONCLUSION

 

¶20 We hold that (1) the trial court misconstrued subsection (H) by including, as part of the statutory period required by § 7505-4.2(H), the six months when Mother's mental deficiency caused her to be adjudicated legally and mentally incompetent; (2) the district court is not restricted to applying only subsection (L) any time the parent in question has been diagnosed with a mental illness or deficiency; and (3) the order deeming Child eligible for adoption without Mother's consent is not supported by clear and convincing evidence. Accordingly, we reverse the trial court's order declaring Child eligible for adoption without Mother's consent.

¶21 REVERSED.

WISEMAN, P.J., and FISCHER, J., concur.

FOOTNOTES

[1] The record indicates that Mother was convicted in January 2014 and sentenced to four years of probation. At some point in mid- to late 2015 she was arrested for violating the terms of her probation. She was thereafter referred by a federal magistrate for the Northern District of Oklahoma for an examination to determine whether she was suffering from a mental disease or defect rendering her unable to understand the nature and consequences of the proceeding against her or to assist properly in her defense. As discussed later in the text, the trial court initially admitted forensic psychiatric evaluations related to Mother's diagnosis, then excluded them, but then characterized as "uncontroverted" her mental illness and incompetence for the time period claimed.

[2] See trial transcript at pp. 57-58.

[3] The court also recognized that the federal district court had entered an order declaring Mother incompetent to stand trial. See trial transcript at pp. 71-73.

[4] Transcript at p. 84.

[5] Subsections (f) and (g) of 43A O.S.2011 § 6-201, art. II, provide:

(f) "Mental illness" shall mean mental disease to such extent that a person so afflicted requires care and treatment for the welfare of the person, or the welfare of others, or of the community.
(g) "Mental deficiency" shall mean mental deficiency as defined by appropriate clinical authorities to such extent that persons so afflicted are incapable of managing themselves and their affairs, but shall not include mental illness as defined herein.

[6] This determination does not take into account the undisputed evidence that Mother filed a motion in the divorce proceeding to enforce visitation prior to receiving notice that Stepmother's adoption petition had been filed. However, under the Court's recent decision in In re Adoption of M.A.S., 2018 OK 1, ¶¶ 23-29, 419 P.3d 204, such action by Mother might be sufficient to invoke the defense available under § 7505-4.2(H)(2), that she was prevented from establishing or maintaining a substantial and positive relationship with Child.

 

 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2001 OK 103, 39 P.3d 802, 72 OBJ 3648, IN RE ADOPTION OF C.D.M.
Discussed
 2004 OK 33, 91 P.3d 646, IN RE: A.N.O., A MINOR CHILD
Discussed
 2011 OK 77, 261 P.3d 1159, IN THE MATTER OF THE ADOPTION OF G.D.J.
Discussed
 2017 OK 58, 398 P.3d 323, IN THE MATTER OF B.K.
Discussed at Length
 2018 OK 1, 419 P.3d 204, IN THE MATTER OF THE ADOPTION OF M.A.S.
Discussed
 1943 OK 391, 144 P.2d 965, 193 Okla. 324, GROENEWOLD v. GROENEWOLD
Discussed
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 24, Capacity to Make Conveyance, Contract, or Will
Discussed
Title 43A. Mental Health
 Cite
Name
Level

 43A O.S. 1-103, Definitions
Cited
 43A O.S. 6-201, Interstate Compact - Form and Contents
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA