63 P.3d 573 (2003)
2003 OK CIV APP 14
In the Matter of C.R. and S.R., Deprived Children,
Gena Klueckman, Appellant,
v.
State of Oklahoma, Appellee.
No. 97,766.
Court of Civil Appeals of Oklahoma, Division No. 3.
January 10, 2003.
Kristie C. Scivally, Lopez & Scivally, Oklahoma City, for Appellant.
Mary H. Smith, Assistant District Attorney, Oklahoma City, for Appellee.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 3.

OPINION
ADAMS, Presiding Judge.
¶ 1 Gena Klueckman (Mother) appeals an order filed by the trial court, after a jury verdict, finding S.R., her child who was not quite one year old when this case was tried, deprived and terminating her parental rights to S.R.[1] Mother contends the State did not present sufficient evidence to justify termination of her rights and that the trial court should have applied the Oklahoma Indian Child Welfare Act, 10 O.S.2001 § 40 et seq. (the Act), to any action regarding S.R. We affirm.
¶ 2 Mother's second argument, if correct, would be dispositive, and we address it first. Mother claims the father of S.R. is Robert Reed, whom she contends is a member of the Cheyenne and Arapahoe Tribes of Oklahoma (the Tribes). The record contains confirmation from the Tribes that the rolls included a *574 member named "Bobby Reed." Despite this evidence, the trial court concluded S.R. was not an Indian child as defined by the Act. We agree.
¶ 3 Section 40.2(2) of the Act defines an "Indian child" as:
[A]ny unmarried or unemancipated person who is under the age of eighteen (18) and is either:
a. a member of an Indian tribe, or
b. is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe;
The same letter from the tribe which confirms the presence of "Bobby Reed" on the tribal rolls notes "[i]n order for anyone to be enrolled with the tribes, they must have an enrolled parent on their birth certificate. The child would be eligible with Bobby's name on the birth certificate, showing him as the enrolled biological father." The alleged father's name does not appear on S.R.'s birth certificate, according to the undisputed evidence, and S.R. was therefore not eligible for membership in the Tribes at the time this case was tried.
¶ 4 When this case was tried, S.R. was not eligible for membership in an Indian tribe as required for her to be an "Indian child" under the Act. The trial court did not err in ruling that the Act did not apply.
¶ 5 We now turn to Mother's argument that the State failed to produce sufficient evidence to support termination of her rights to S.R. The State based its claim for termination on 10 O.S.2001 § 7006-1.1(A)(6) which authorizes termination of parental rights upon:
A finding that a subsequent child has been born to a parent whose parental rights to any other child has been terminated by the court; provided, that the applicant shall show that the condition which led to the making of the finding which resulted in the termination of such parent's parental rights to other child has not been corrected.
It is undisputed on this evidence that Mother's parental rights to another child, A.R., had been terminated prior to S.R.'s birth. Accordingly, in order to successfully terminate Mother's rights to S.R., the State was required to prove by clear and convincing evidence that the conditions which led to the termination of her rights to A.R. had not been corrected and that termination was in S.R.'s best interest. See Matter of C.G., 1981 OK 131, 637 P.2d 66.
¶ 6 Where the sufficiency of that evidence is challenged on appeal, our task has been to review the evidence, without weighing it, to make certain that the State has satisfied its heavy burden and that the evidence meets that burden. In essence, we affirm the factfinder's decision only where the record contains "competent evidence from which the [jury] could have determined that the State satisfied its burden with clear and convincing evidence." Matter of H.M., 1998 OK CIV APP 176, ¶ 3, 970 P.2d 1190, 1191.
¶ 7 This approach is consistent with the analysis used by the United States Supreme Court, the United States Court of Appeals for the Tenth Circuit, and the Oklahoma Criminal Court of Appeals in reviewing on appeal the sufficiency of the evidence to support a jury verdict of guilty in criminal cases, which impose upon the prosecuting authority a "beyond a reasonable doubt" burden of proof. Each of these courts applies some form of the holding made by the United States Supreme Court in U.S. v. Powell, 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984) that "[s]ufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." See U.S. v. Moore, 198 F.3d 793 (10th Cir.1999), cert. denied 529 U.S. 1076, 120 S.Ct. 1693, 146 L.Ed.2d 499, and Pickens v. State, 2001 OK CR 3, 19 P.3d 866, cert. denied, 536 U.S. 961, 122 S.Ct. 2668, 153 L.Ed.2d 842.
¶ 8 However, the Oklahoma Supreme Court recently decided Matter of S.B.C., 2002 OK 83, 64 P.3d 1080. The Court vacated a decision of another division of the Court of Civil Appeals which applied the so-called "any competent evidence" standard of review in evaluating an appellate claim that the evidence was insufficient to support a jury verdict *575 for termination. The Court concluded the "any competent evidence" standard was insufficient under the United States Constitution to protect the rights of the parents to due process.
¶ 9 S.B.C. does not discuss the manner in which the intermediate appellate court applied the standard or whether its analysis acknowledged the obligation to be certain that the State's evidence was legally sufficient to be "clear and convincing." Therefore, it is unclear whether the Oklahoma Supreme Court intended in S.B.C. to reject the analytical approach used in Powell, Moore, Pickens and H.M., in favor of requiring Oklahoma appellate courts to act as a collective "seventh juror"[2] who will weigh the evidence and decide if that evidence is "clear and convincing" factually, or whether the Court was emphasizing that the use of the "any competent evidence" mantra was not an excuse for avoiding the legal decision of whether the evidence produced by the state, if believed, would support any rational trier of the facts in concluding that the evidence for termination was clear and convincing.
¶ 10 Fortunately, we need not attempt to decide that question here. Under either standard, the evidence in this case is sufficient. A.R. was declared deprived because Mother repeatedly left him unsupervised, and she was advised that she needed parenting classes, psychological evaluation, and, subsequently, anger management classes, among other things in order to correct that condition. Her rights to A.R. were terminated because she had not completed those requirements. By her own admission, Mother had done nothing to change her circumstances, attitude and parenting abilities since her rights to A.R. were terminated.
¶ 11 The State produced evidence which, if believed, established that Mother had relegated most of the care for S.R., who was then an infant, to C.R., who was then eight or nine years old, and that she acknowledged little or no responsibility for the fact that she had lost her right to A.R. and that S.R. and C.R. had been removed from her custody. All of this evidence, if believed, clearly and convincingly establishes that Mother had not corrected the conditions which resulted in the termination of her rights to A.R. and that termination of her rights to S.R. was in the child's best interest. The trial court's order is affirmed.
AFFIRMED.
JOPLIN, C.J., and BUETTNER, J., concur.
NOTES
[1] The case also involved allegations that S.R.'s older half-sibling, C.R., was deprived and that Mother's rights should be terminated as to this child as well. However, the jury found C.R. deprived but concluded Mother's rights should not be terminated. Mother's appeal raises no issues that affect any orders with regard to C.R.
[2] Juvenile cases have six-person juries.