2005 OK CIV APP 19

**In the Matter of H.H., a deprived child under 18 years of age,**

**Renita JAMES, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. 100,562.**

Court of Civil Appeals of Oklahoma, Division 1.

Feb. 4, 2005.

David C. Morse, Tulsa, OK, for Appellant.

Tim Harris, District Attorney, Becki A. Murphy, Assistant District Attorney, Tulsa, OK, for Appellee.

Rene Waisner, Assistant Public Defender, Tulsa, OK, for the child.

## OPINION

ADAMS, Presiding Judge.

¶ 1   Renita James (Mother) appeals a trial court order terminating her parental rights to H.H. based upon a jury verdict which found the State had proven the existence of each of four separate grounds for termination under 10 O.S.2001 § 7006–1.1(A) and that termination was in H.H.'s best interest. Mother contends she had ineffective assistance of her court-appointed counsel[1] and that the State did not present sufficient evidence to justify termination of her rights. We affirm the trial court's order.

¶ 2   Mother's complaints about her first attorney concern a prejudicial allegation in the petition filed in her son's deprived child case and that attorney's alleged failure to appear at the July 22, 2002 Adjudication

hearing and other hearings held prior to the Disposition hearing.  These arguments are premised on her claim that the original attorney was appointed to represent her on June 18, 2002, and because he "never showed," the petition's allegations were uncontested and the Treatment Plan "was imposed" on her.

¶ 3   To prove ineffective assistance of counsel, a parent must show both that the attorney's performance was deficient, and that it prejudiced the defense.  *In the Matter of S.S.*, 2004 OK CIV APP 33, 90 P.3d 571. Mother can not do so in this case.  The record demonstrates that it was the *minor child's* attorney who was appointed on June 18, 2002, and that Mother's attorney was appointed by the court to represent her the same day her pauper's affidavit was approved—August 26, 2002.  Until that date, Mother's court-appointed attorney had no obligation to attend any hearings in this matter, including the July 22, 2002 Adjudication hearing.[2]

¶ 4   Concerning Mother's argument regarding the prejudicial allegation within the deprived child petition, the record further demonstrates that Mother attended her son's emergency custody review hearing on June 18, 2002, and at that time was given notice of the July 22, 2002 Adjudication hearing. However, she failed to appear that day, the result of which "without reasonable cause constitutes the person's consent to a deprived child adjudication."  10 O.S.2001 § 7003–3.6(A).  Mother gives us no reason for her absence, and in fact testified that she was not in custody or incarcerated from June of 2002 until April of 2003.

¶ 5   The record further reveals that Mother's current counsel did not object to the admission of the petition at the beginning of the jury trial.  Error may not be predicated upon a ruling which admits evidence unless a substantial right of a party is affected and a

---

1.  Mother's attorney for this appeal was appointed the same day the trial court approved the first attorney's withdrawal, almost nine months before her jury trial.

2.  Under 10 O.S.2001 § 7003–3.7(A)(1)(a), Mother was entitled to a court-appointed attorney upon request, if she was without sufficient financial means.  She was also entitled to notice of

this right, and the record supports the conclusion that she received this notice at the hearing on June 18, 2002.  Nevertheless, nothing in the record suggests Mother requested an attorney or contended she was without sufficient financial means to retain one until August 26, 2002, more than a month after the Adjudication hearing.

timely objection appears of record, stating the specific ground of objection if such ground was not apparent from the context. *See* 12 O.S.2001 § 2104(A)(1). Although Mother contends the petition's allegation stating she had "used a recent tax refund to bail natural father out of jail" was "inherently prejudicial" and without evidentiary proof, she admits that the same statement could be viewed both against her, *i.e.,* "[Mother] is just worried about her boyfriend," and favorably, *i.e.,* "Mother was working and trying to support her child." Considering Mother consented to the petition's allegations by virtue of § 7003–3.6(A) and that she specifically denied the allegation when asked about it by her attorney, Mother has not demonstrated she was prejudiced in any way, and the trial court's judgment may not be reversed upon the other grounds alleged by Mother.

¶6 We next address Mother's argument that the State did not prove by clear and convincing evidence that it was in the best interest of H.H. to terminate her parental rights. Although the State based its claim for termination on four separate 10 O.S.2001 § 7006–1.1(A) grounds,[3] Mother addresses only 10 O.S.2001 § 7006–1.1(A)(5), which authorizes termination of parental rights upon:

A finding that:

a. the child has been adjudicated to be deprived, and

b. such condition is caused by or contributed to by acts or omissions of the parent, and

c. termination of parental rights is in the best interests of the child, and

d. the parent has failed to show that the condition which led to the adjudication of a child deprived has been corrected although the parent has been given not less than the time specified by Section 7003–5.5 of this title to correct the condition.

¶7 Where the sufficiency of the evidence is challenged on appeal, our task is to review the evidence, without weighing it, to make certain that the State has satisfied its heavy burden and that the evidence meets that burden. We will affirm the factfinder's decision only where the record contains evidence from which the jury could reasonably have determined that the State satisfied its burden with clear and convincing evidence. *In the Matter of C.R.,* 2003 OK CIV APP 14, 63 P.3d 573.[4]

¶8 On this record, we must conclude the evidence is sufficient. Mother was on a deferred sentence for a 1999 drug offense, Possession of a Controlled Drug with Intent to Distribute, and had tested positive for cocaine one month after H.H.'s birth in April of 2001, when on June 11, 2002, police arrested Mother for possession of a controlled drug at her sister's house, finding there also a loaded weapon, H.H. and his four cousins, all unsupervised. As a result, H.H. was eventually declared deprived. In order to correct that condition, Mother was advised that she needed to obtain a psychological evaluation which was to include a substance abuse assessment, to enroll and successfully complete parenting classes appropriate for H.H.'s age and needs, and to maintain a legal, stable source of income and employment, among other things. However, Mother did not complete those requirements and was arrested again in April of 2003 for possession of a controlled drug. She subsequently pled guilty to all three drug-related charges and sentenced to incarceration for 5 years.[5]

¶9 Mother gave numerous reasons for not completing those requirements before

---

3. The four grounds were 1) failure to correct the conditions which led to the child's deprived status, 10 O.S.2001 § 7006–1.1(A)(5); 2) parental incarceration, 10 O.S.2001 § 7006–1.1(A)(12); 3) parental history of extensive, abusive and chronic use of drugs or alcohol and resistance to treatment for a 3 year period, 10 O.S.2001 § 7006–1.1(A)(14); and 4) child in foster care for 15 of most recent 22 months preceding the filing of petition, 10 O.S.2001 § 7006–1.1(A)(15).

4. This case recognized that the precise nature of the application of the appellate standard of review is open to question under the Oklahoma

Supreme Court's rejection of the "any competent evidence" standard in *Matter of S.B.C.,* 2002 OK 83, 64 P.3d 1080. Even if we are required to sit as a "collective 'seventh juror,'" *C.R.,* 2003 OK CIV APP 14, ¶9, 63 P.3d at 575, we would reach the same conclusion.

5. After her arrest, Mother's deferred sentence for the 1999 offense was revoked and she pled guilty and was sentenced to 3 years in the custody and control of Department of Corrections (DOC) in CF–99–3982—Possession of Controlled Drug with Intent to Distribute, and 3 years in CF–2002–2997—Possession of Controlled Drug AFCF

her imprisonment and testified that she had taken several classes towards those requirements while in jail, but further testified that because her case was civil, instead of criminal, "her jacket," which included the certificates of completion, "can't come to court" and because prisoners are not allowed to make photocopies of any certificates. However, the jury also heard testimony from the DHS caseworker disputing Mother's claims, and that it was in H.H.'s best interest to have his mother's rights terminated because "he deserves permanency in his life." Moreover, although it is undisputed on this record that H.H.'s foster parents were very willing to bring H.H. for visitation, Mother admitted she had not visited him in almost a year.

¶ 10 All of this evidence, if believed, clearly and convincingly establishes the existence of all of the elements contained in § 7006–1.1(A)(5). As a result, we need not review the remaining bases for the jury's verdict in favor of terminating Mother's parental rights. The trial court's judgment is affirmed.

AFFIRMED

HANSEN, J. (sitting by designation), concurs in result, and MITCHELL, J., concurs.

(after former conviction of a felony), with both sentences to run concurrently. In September, 2003, Mother pled guilty in CF–2003–333—Possession of Controlled Drugs and was sentenced to 5 years in the custody and control of DOC, to run concurrently with her other felonies and with credit for time served.