IN THE MATTER OF C.K.T.
2024 OK CIV APP 23
Case Number: 121602
Decided: 09/11/2024
Mandate Issued: 10/03/2024
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2024 OK CIV APP 23, __ P.3d __

 
See Okla.Sup.Ct.R. 1.200 before citing.

In the Matter of: C.K.T. and L.L.T., Alleged Deprived Children

NICOLE BLOSCH, Plaintiff/Appellant,
v.
STATE OF OKLAHOMA, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
GRADY COUNTY, OKLAHOMA

HONORABLE Z. JOSEPH YOUNG, TRIAL JUDGE

AFFIRMED IN PART AND REVERSED IN PART

Spencer Schroeder, Schroeder Law, Chickasha, Oklahoma, for Plaintiff/Appellant

Jason Hicks, GRADY COUNTY DISTRICT ATTORNEY, Jeff Sifers, Morgan Lankford, ASSISTANT DISTRICT ATTORNEYS, Chickasha, Oklahoma, for Defendant/Appellee

Kyle Eastwood, Stephanie Robinson, BUZBEE, UPCHURCH, SQUIRES & EASTWOOD, Anadarko, Oklahoma, for Minor Children

JANE P. WISEMAN, PRESIDING JUDGE:

¶1 Nicole Blosch

FACTS AND PROCEDURAL HISTORY

¶2 On September 3, 2021, State filed a petition to adjudicate CKT, born in April 2019, and LLT, born in May 2020, deprived as to Blosch and their father, Bradley Thompson, who is not a party to this appeal. State alleged Blosch did not provide CKT and LLT with proper care and guardianship due to the following reasons: domestic violence, "possessing/using illegal drugs/addiction," violent behavior, and "homelessness/failure to maintain adequate housing." State alleged Thompson did not provide CKT and LLT with proper care and guardianship due to the following reasons: domestic violence, "homelessness/failure to maintain adequate housing," and "[f]ailure to protect by knowingly placing children with mother while she was using illegal drugs and prone to violent behavior."

¶3 Blosch and Thompson stipulated to the deprived petition. The adjudication order states the Indian Child Welfare Act applies and lists the Tribe(s) as "Hual[a]pai &/or Choctaw Nation." The following conditions attributed to the parents are listed as causing the children to be deprived: "possessing/using illegal drugs/addiction," domestic violence, failure to protect, violent behavior, and "homelessness/failure to maintain adequate housing."

¶4 An Individualized Service Plan (ISP) Dispositional Report filed on October 8, 2021, required Blosch to complete an alcohol and drug assessment and follow any recommendations resulting from the assessment. If treatment or counseling is recommended after assessment, Blosch must successfully complete the treatment or counseling and develop a relapse plan. Blosch must also submit to random drug testing. The ISP requires Blosch to "attend, participate, and complete domestic violence education and prevention program for 'offenders'" and also "address anger management to assist in how to properly deal with anger to prevent any abuse to children or mate." The ISP also requires Blosch to provide for the children's emotional, medical and physical needs, including safe housing. The ISP's other requirements include participating in visitation, signing any required releases, keeping in contact with her DHS worker, and participating in services and court hearings.

¶5 On July 12, 2022, State filed a petition to terminate Blosch's and Thompson's parental rights pursuant 10A O.S. § 1-4-904(B)(5) and(B)(15). The petition alleges that neither the federal Indian Child Welfare Act (ICWA) nor the Oklahoma Indian Child Welfare Act (OICWA) applies. In September 2022, the Hualapai Tribe notified DHS that the children were not eligible to enroll in the Tribe because they did not meet its blood quantum requirement.

¶6 In January 2023, Blosch filed a motion to dismiss the petition to terminate because she alleged that CKT and LLT were eligible for membership in the Choctaw Tribe. On February 7, 2023, the trial court concluded the petition to terminate was not ICWA compliant and dismissed it. Thompson had voluntarily relinquished his parental rights on November 22, 2022. The trial court held that Thompson's relinquishment was not ICWA compliant and vacated the order terminating his parental rights.

¶7 Also on February 7, 2023, State filed a petition to terminate Blosch's and Thompson's parental rights. State alleged Blosch's parental rights should be terminated pursuant to 10A O.S. § 1-4-904(B)(5) because she failed to correct the following conditions which led to the deprived adjudication although she had been given at least three months to do so: domestic violence, "possessing/using illegal drugs/addiction," and violent behavior. State also alleged Blosch's parental rights should be terminated pursuant to 10A O.S. § 1-4-904(B)(17), which allows termination when a child was under four years of age when he or she was placed in foster care and had been in foster care for six of the most recent 12 months. State also sought to terminate Thompson's parental rights pursuant to 10A O.S. § 1-4-904(B)(5) and (B)(17). State asserted CKT and LLT are Indian children within the meaning of ICWA and OICWA. The Choctaw Nation later confirmed CKT's and LLT's membership in the Tribe. State filed multiple Active Efforts affidavits detailing DHS's efforts to provide services to the family to comply with ICWA.

¶8 A jury trial was held on August 28-30, 2023. The overwhelming evidence at trial established Blosch failed to complete her ISP's requirements. Blosch admitted she completed only three of 16 parenting classes, two of 16 relapsing classes, and no individual classes. She denied having a problem with domestic violence.

¶9 Blosch admitted drug use but denied addiction. When asked why she continued to use drugs, she replied, "I use here and there just because I have no direction and . . . I'm fighting and doing all this for my kids, but I don't get any time, I don't get any--any role to be a mother to them." When asked what it is "going to take for [her] to get off drugs or not use at all anymore," she replied, "To have my kids back--or more thought that I was gonna receive them back at least."

¶10 Angela Diaz De Rojero, a DHS lead permanency worker, was assigned as CKT's and LLT's primary worker in February 2022. Blosch admitted to Angela that she used methamphetamine from May 2022 through July 2023. Angela testified that in June 2023, Blosch returned for a third time to Southwest Youth and Family Services to begin outpatient treatment for substance abuse. Angela testified that Blosch had not followed through as of August 1, 2023. Blosch only attended two classes and did not show up for the last three classes in August. Angela continued:

I also did find her beds in two different treatment facilities, I offered to transport her that same day that I found the bed. One of them was an excellent treatment facility, one that allows you to eventually reunify with your children within treatment. And I gave her that information, I explained all that information to her, and she did not follow through. All she had to do was call, do an intake, and we would have her at the door, and she did not follow through.

¶11 The jury found that both Thompson's and Blosch's parental rights should be terminated because they both failed to correct one or more conditions that led to the deprived finding, CKT and LLT had been in foster care for six of the most recent 12 months, and termination of parental rights was in the children's best interest. The jury found that the conditions Thompson failed to correct were homelessness and failure to maintain adequate housing, and failure to protect the children by placing them with Blosch "while she was using illegal drugs and prone to violent behaviors." It found the conditions Blosch failed to correct were possessing or using illegal drugs and addiction. The jury did not find Blosch failed to correct the conditions of domestic violence and violent behavior.

¶12 The order terminating Blosch's parental rights finds clear and convincing evidence that her parental rights should be terminated pursuant to 10A O.S. § 1-4-904(B)(5) because she failed to correct the conditions of "possessing/using illegal drugs/addiction," domestic violence, and violent behavior, although given at least three months to do so, and pursuant to 10A O.S. § 1-4-904(B)(17) because the children were under four years of age at the time of placement, they have been in foster care for at least six of the 12 months preceding the filing of the petition and they could not be safely returned to the home at the time of the petition's filing. The court further found that it is in the children's best interests for Blosch's parental rights to be terminated. The court found evidence beyond a reasonable doubt by testimony of a qualified expert witness that Blosch's continued custody of the children "is likely to result in serious emotional or physical damage/harm to the child[ren]."

¶13 Blosch appeals.

STANDARD OF REVIEW

¶14 As a general rule, before parental rights may be severed, State must prove its case by clear and convincing evidence. See In re S.B.C., 2002 OK 8364 P.3d 1080In re M.R., 2024 OK 28548 P.3d 120See In re T.L., 2003 OK CIV APP 4971 P.3d 43In re HMW, 2013 OK 44304 P.3d 738

¶15 "[I]n cases under the State and Federal Indian Child Welfare Acts, the State must prove beyond a reasonable doubt that continued custody by the parent is likely to result in serious emotional or physical damage to the child." In re HMW, 2013 OK 44

No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C.A. § 1912(f).

¶16 We thus direct our appellate review of the evidence "toward assuring the evidence adduced by State, if believed, would support a conclusion by any rational trier of the facts that State's evidence demonstrated beyond a reasonable doubt that continued custody by [Blosch] would result in serious damage to [the children]." T.L., 2003 OK CIV APP 49

¶17 The "beyond a reasonable doubt" standard, however, only applies to the factual determination required by 25 U.S.C.A. § 1912(f) to be made in ICWA termination cases, i.e., '"that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."' In re Adoption of R.L.A., 2006 OK CIV APP 138147 P.3d 306In re J.S., 2008 OK CIV APP 15177 P.3d 590In re Adoption of G.D.J., 2011 OK 77261 P.3d 1159

¶18 Blosch also challenges the trial court's admission of evidence. "A trial court has discretion in deciding whether proffered evidence is relevant and, if so, whether it should be admitted, and a judgment will not be reversed based on a trial judge's ruling to admit or exclude evidence absent a clear abuse of discretion." Myers v. Missouri Pac. R.R. Co., 2002 OK 6052 P.3d 1014

ANALYSIS

¶19 Blosch asserts on appeal that the trial court abused its discretion and erred when it allowed the introduction of the Individualized Service Plan Dispositional Reports and Progress Reports (ISP Reports) into evidence because they contained hearsay evidence. Blosch further asserts State failed to meet its burden to show by clear and convincing evidence that termination of her parental rights is in the children's best interests. And although Blosch does not directly address this issue in her brief in chief, we will additionally address the ICWA requirements in 25 U.S.C.A. § 1912(f) applicable to this case.

I. Blosch failed to show reversible error from the admission of hearsay evidence she alleges contained aspersions against her. 

¶20 Blosch asserts the trial court erred, abused its discretion, and violated Blosch's procedural due process rights by allowing over her attorney's objection the admission into evidence of the ISP Dispositional and Progress Reports. At trial, Blosch's attorney objected to the admission of the ISP Dispositional Report and the ISP Progress Reports introduced by State because they included hearsay, State countered that these reports were documents created by DHS and kept as a regular part of its business records. The court overruled the objection stating:

And to be clear, I'm not--it's not being allowed in for purposes of what's in that document, it's being allowed in because this DHS worker has testified this is DHS's recommendations, and, in fact, the information in there is what their recommendations were based on. It doesn't go to the truth of the matter asserted, it's what it's based on, so the objection is overruled.

¶21 In her brief in chief, Blosch specifically asserts that one of the ISP reports contained the following hearsay evidence, which was admitted in State's Exhibit 6:

"[Blosch] was staying with a friend at [the] Country Park Apartments but had a disagreement with her and moved out on 7/6/22. The friend reported Ms. Blosch[] became angry at her insistence she get substance abuse treatment. After moving out, Ms. Blosch[] returned to her friend's apartment at 8 AM on 7/8/22 and began banging on the windows and front door. A neighbor heard the commotion and called the cops. When they made contact with her, it was found she had a warrant for failure to pay court fees and was arrested."

¶22 Blosch alleges Exhibit 6 also states that Blosch's aunt, who is the children's foster mother, "reported harassment and receiving threats from Ms. Blosch[]'s mother." It further states, "Foster mom's tires were slashed outside of a store on 7/6/22 and it is believed Ms. Blosch[]'s mother and [her husband] were responsible." Blosch claims that in the same ISP Report, "the case worker wrote that supposedly Ms. Blosch[]'s mother threatened to beat the foster mom and take off with the children." Blosch asserts the ISP Report further provides, "The foster mom believes this is being instigated by Ms. Blosch[], and is in the process of filing a protective order against Ms. Blosch[] and her parents."

¶23 Blosch asserts this information and additional information in the ISP Reports that she fails to pinpoint should have been excluded as hearsay. She further asserts that it created prejudice against her, specifically because it implicates her in crimes.

¶24 Title 12 O.S.2021 § 2801

¶25 The DHS-prepared reports, ISP Dispositional Report and the ISP Progress Reports were documents prepared by DHS throughout the case. Both types of ISP Reports contain sections with the following information: "Conditions or Behaviors which need to be changed or corrected;" "Desired Result(s);" "OKDHS Recommendations;" "Progress" summaries; "Recommended findings;" current information about the children's placement, including their physical, emotional, educational, and psychosocial situation, and current information about the living situation of the parents including how they are doing emotionally, physically, financially, and mentally. The ISP Reports also contain the treatment plan requirements, as well as any progress Blosch made on her treatment plan. The reports were updated throughout the case to include new or changed information.

¶26 "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Oklahoma, by statute or by this Code. Evidence which is not relevant is not admissible." 12 O.S.2021 § 240212 O.S.2021 § 2401Myers v. Missouri Pac. R.R. Co., 2002 OK 6052 P.3d 1014Id. (footnote and quoted citation omitted).

¶27 Blosch, alleging the evidence was prejudicial because it implicates her in crimes, cites In re K.H., 2021 OK 33507 P.3d 647K.H., the Supreme Court noted that "[i]n a challenge to a trial court's evidentiary rulings, this Court reviews for two types of errors." Id. ¶ 28. "For errors that are not inherently prejudicial, the test of prejudice is the 'likelihood that the verdict would have been different had [the errors] not occurred, as measured by the usual criterion of the verdict's support in the evidence.'" Id. (quoted citation omitted). "Errors that are inherently prejudicial are 'those from which, by their nature, one of the litigants obtains 'beneficial prejudice.'" Id. ¶ 29 (quoted citation omitted). "Where matters of a highly prejudicial nature have been brought before the jury, even when not manifestly motivated by bad faith, we have regarded such procedure as reversible error 'unless it can be affirmatively ascertained from the record that no harm resulted therefrom.'" Id. (quoted citation omitted).

¶28 The K.H. Court concluded:

State received beneficial prejudice from the evidence of the pending criminal child abuse charges against Parents. State's direct examination of Parents required them to confirm criminal child abuse charges had been filed and were still pending against them. Such testimony served dual purposes--it harmed Parents' credibility with the jury at the outset of the trial and planted in the jurors' minds Parents' uncertain future with their children.

Id. ¶ 41. The Court concluded the "admission of the evidence was inherently prejudicial, prevented Parents from receiving a fair trial, and constitutes reversible error." Id. ¶ 50. However, the Supreme Court also pointed out:

Three facts distinguish this parental rights termination proceeding from this Court's prior parental rights termination decisions. First, the challenged criminal child abuse charges arise out of the same facts on which State's amended petition is based--and was offered against Parents prior to conviction. Second, State's petitions seek to adjudicate the children deprived concurrently with termination of parental rights based on heinous and shocking physical abuse against their sibling. Third, over Parents' objections, evidence of the pending criminal charges was admitted during the termination jury trial.

Id. ¶ 14 (footnotes omitted).

¶29 In In re A.B., 2024 OK CIV APP 1542 P.3d 872In re K.H., it '"affirmatively ascertained from the record that no harm resulted therefrom."' Id. (quoting In re K.H., 2021 OK 33In re A.B., State sought to terminate a mother's parental rights on three grounds including failure to correct the conditions leading to the children being adjudicated deprived, length of time in foster care, and a substantial erosion in the children's relationship with their mother. Id. ¶ 5. The trial court allowed admission of evidence of mother's arrest for drug-related charges. Id. ¶ 9. The In re A.B. Court found the trial court erred when it admitted evidence of the mother's arrests. Id. ¶ 14. It concluded, "As in Matter of K.H., the danger of unfair prejudice substantially outweighed what little probative value the evidence offered. However, even if we consider the court's error 'inherently prejudicial' such that the heightened standard of review for reversibility is triggered, factors that distinguish this case from Matter of K.H. lead us to conclude that the error here is not reversible." Id.

¶30. The Court noted, "The State sought termination on only one ground in Matter of K.H., and the Court was concerned that the criminal child abuse charges arose out of the same facts for which the State sought termination but were offered as evidence against the parents in their termination cases before they had been criminally convicted." Id. ¶ 15. Also, the In re K.H. "Court also found it important that the children's deprived adjudication was tried concurrently with the parental rights termination." Id.

¶31 The In re A.B. Court, noting its case had "none of the factors the Court found to be particularly distinguishing in Matter of K.H.," said:

The children here were separately adjudicated as deprived, and Mother's arrests were subsequent to and thus involved completely different facts from those underlying the children's removal. Further, the State sought termination on three grounds: failure to correct the conditions leading to the children's deprived adjudication, substantial erosion of the parent/child relationship, and the length of time the children had been in foster care without the ability to be safely returned to Mother's home. Thus, unlike Matter of K.H., the grounds for which the State sought termination presented the jury with factual questions that differ from the factual questions involved in Mother's criminal cases. Finally, Mother does not challenge the other abundant evidence supporting the jury's verdicts.

Id. ¶ 16.

¶32 We find the In re A.B. Court's reasoning persuasive and applicable here. CKT and LLT were adjudicated deprived separately. The evidence to which Blosch objects is directed toward her alleged violent behavior and behavior that occurred after the children were removed from her home. State sought termination of Blosch's parental rights on failure to correct the conditions of possessing or using illegal drugs and addiction, as well as domestic violence and violent behavior. Blosch admitted using illegal substances. This was the sole condition the jury found Blosch failed to correct. The jury rejected State's claims that Blosch failed to correct the conditions of domestic violence and violent behavior. Blosch has not demonstrated that evidence of her violent behavior or arrest was prejudicial when the jury did not find violent behavior to be a basis for terminating her parental rights. Similarly, Blosch does not challenge the abundant evidence regarding her drug use and failure to address her drug use through treatment.

¶33 As did the In re A.B. Court, "[w]e have affirmatively ascertained from the record on appeal that, despite the court's admission of prejudicial evidence, [Blosch] otherwise received a fair trial and no harm resulted from the error." In re A.B., 2024 OK CIV APP 1

II. State proved by clear and convincing evidence that her parental rights should be terminated.

¶34 Title 10A O.S.2021 § 1-4-904(A) provides, "A court shall not terminate the rights of a parent to a child unless: 1. The child has been adjudicated to be deprived either prior to or concurrently with a proceeding to terminate parental rights; and 2. Termination of parental rights is in the best interests of the child."

¶35 Additionally, one of the legal grounds in subsection B must be proven. State sought to terminate Blosch's parental rights pursuant to 10A O.S.2021 § 1-4-904 (B)(17), which requires State to prove CKT and LLT, who without dispute were both younger than four years of age at the time of their placement, have "been placed in foster care by the Department of Human Services for at least six (6) of the twelve (12) months preceding the filing of the petition or motion for termination of parental rights and the child cannot be safely returned to the home of the parent."

¶36 The court may also consider the following in reaching its decision:

(1) circumstances of the failure of the parent to develop and maintain a parental bond with the child in a meaningful, supportive manner, and

(2) whether allowing the parent to have custody would likely cause the child actual serious psychological harm or harm in the near future as a result of the removal of the child from the substitute caregiver due to the existence of a strong, positive bond between the child and caregiver.

10A O.S.2021 § 1-4-904(B)(17)(b).

¶37 There was no dispute that these children had been in foster care for six of the 12 months before the petition to terminate was filed. As a result, State needed to show by clear and convincing evidence that termination of Blosch's parental rights was in CKT's and LLT's best interests and that the requirements of 10A O.S.2021 § 1-4-904(B)(17) were met. After review, we conclude State met its burden.

¶38 "Where the sufficiency of that evidence is challenged on appeal, our task is to review the evidence, without weighing it, to make certain that the State has satisfied its heavy burden and that the evidence meets that burden." In re C.R., 2003 OK CIV APP 1463 P.3d 573Id. (quoting In re H.M., 1998 OK CIV APP 176970 P.2d 1190

¶39 The Court of Civil Appeals in In re K.N.L., 2007 OK CIV APP 22154 P.3d 1276Id. Blosch has been unable to resume her parental responsibility because of her drug use, despite DHS's repeated attempts to provide her treatment opportunities.

¶40 We reiterate that as an appellate court, we do not weigh the evidence. But we must determine whether the evidence introduced, if believed by the jury, establishes each of the necessary elements for termination of Blosch's parental rights pursuant to 10A O.S.2021 § 1-4-904(B)(17). We conclude it does.

¶41 At the time of trial, CKT and LLT had been out of Blosch's home for just short of two years. The deprived petition was filed on September 3, 2021, and the trial began on August 28, 2023. State presented evidence of the children's need for permanency, including a stable home. It also presented evidence that CKT and LLT are bonded with their foster family, who have provided them with a suitable, stable home for nearly two years as of the date of trial.

¶42 Title 10A O.S.2021 § 1-4-904(B)(17)(b) specifically allows the trial court to consider the circumstances surrounding a parent's failure to develop and maintain a bond with the children and whether allowing the parent to have custody of the children would harm them by removing them from their foster parents due to their strong and positive bond. State presented evidence about the children's extended stay in foster care, their need for permanency, and their bond with their foster parents.

¶43 Angela Diaz De Rojero testified that the children could suffer serious emotional or physical damage if they were returned to Blosch. She reported that Blosch has not completed any part of her plan and has shown no change in behavior. DHS believes that it is in CKT's and LLT's best interests for Blosch's parental rights to be terminated and for the children to remain in their current placement which provides a stable, safe, and nurturing environment. Angela testified that permanency is important for the children because they need a stable family who will provide for their basic needs. She emphasized that the children have that with their foster family.

¶44 Melody West, recognized by the court as an expert witness under ICWA, is employed by the Choctaw Nation of Oklahoma as an Indian social worker. She testified the Tribe supports the termination of Blosch's parental rights "because of the safety issues." She went on to testify that "if the children were returned home, it could cause serious or emotional damage to them." Blosch's substance abuse problems would affect the children's development. The Tribe believes it is in CKT's and LLT's best interests for Blosch's parental rights to be terminated. She testified there are safety issues because "we can't measure any progress in the substance abuse because drug testing is not being completed." None of the services offered by DHS or the Tribe had been completed.

¶45 According to West, the children have bonded with their foster parents and have become part of the foster parents' family in the almost two years they have lived there. West further indicated the children have a strong and positive bond with their foster parents and they would suffer serious psychological harm if that bond were broken.

¶46 State presented clear and convincing evidence that Blosch's parental rights should be terminated pursuant to 10A O.S.2021 § 1-4-904(B)(17). The children were one and two years of age when they came to live with their foster parents and have been there just short of two years, well beyond the statutory requirement of six months. State presented clear and convincing evidence that termination of Blosch's parental rights is in CKT's and LLT's best interests, both children were under the age of four and were in foster care for six of the 12 months before State filed the petitions to terminate, they cannot safely be returned to Blosch's home, and termination of Blosch's parental rights is in the children's best interests.

¶47 State also presented clear and convincing evidence that Blosch's parental rights should be terminated pursuant to 10A O.S.2021 § 1-4-904(B)(5), which requires "[a] finding that: a. the parent has failed to correct the condition which led to the deprived adjudication of the child, and b. the parent has been given at least three (3) months to correct the condition . . . ."

¶48 The jury found that Blosch failed to correct the condition of "possessing/ using illegal drugs/addiction." Blosch testified that she uses illegal drugs. According to Angela Diaz De Rojero, Blosch did nothing to address her substance abuse. Blosch admitted to methamphetamine use. Angela made repeated attempts to get her into inpatient treatment programs, and Blosch failed to complete three outpatient programs. She further testified it is in CKT's and LLT's best interests for Blosch's parental rights to be terminated.

¶49 State presented clear and convincing evidence that termination of Blosch's parental rights is in the children's bests interests due not only to drug use, but also because the children need permanency.

¶50 "[A] termination order may be affirmed where only one statutory ground is met." In re E.J.T., 2024 OK 14544 P.3d 950

¶51 The jury, however, did not conclude Blosch failed to correct the conditions of domestic violence and violent behavior. We must therefore reverse the portion of the trial court's order that Blosch's parental rights should be terminated on domestic violence and violent behavior grounds.

III. State proved beyond a reasonable doubt that Blosch's continued custody of the children would likely result in serious emotional or physical harm to them.

¶52 Title 25 U.S.C.A. § 1912(f) requires that a parent's rights to an Indian child cannot be terminated unless the termination is "supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." State presented testimony of a qualified expert witness, Melody West, that if CKT and LLT were returned home to Blosch, it could cause serious emotional damage to the children. She further testified that if the children were returned to Blosch and taken from their foster parents, they would suffer serious psychological harm. We conclude West's testimony is sufficient to meet ICWA's requirements under 25 U.S.C.A. § 1912(f).

CONCLUSION

¶53 Blosch failed to show reversible error by the trial court in admitting the ISP Reports into evidence. State met its burden to show by clear and convincing evidence the elements necessary to terminate Blosch's parental rights pursuant to 10A O.S.2021 § 1-4-904(B)(17) for time in foster care and pursuant to 10A O.S.2021 § 1-4-904(B)(5) for failure to correct the condition of "possessing/using illegal drugs/addiction," but the trial court erred in also terminating Blosch's parental rights for failure to correct the conditions of domestic violence and violent behavior when the jury did not find termination for failure to correct those conditions. State also provided evidence beyond a reasonable doubt that Blosch's continued custody of the children would result in serious emotional damage to them.

¶54 The trial court's decision to terminate Blosch's parental rights pursuant to 10A O.S.2021 § 1-4-904(B)(17) for time in foster care and pursuant to 10A O.S.2021 § 1-4-904(B)(5) for failure to correct the condition of "possessing/using illegal drugs/addiction" is affirmed. The trial court's decision to terminate Blosch's parental rights pursuant to 10A O.S.2021 § 1-4-904(B)(5) for failure to correct the conditions of domestic violence and violent behavior is reversed. The reversal on this last ground does not affect the validity of the court's decision to terminate on the first two grounds.

¶55 AFFIRMED IN PART AND REVERSED IN PART.

BARNES, C.J., and FISCHER, J., concur.

FOOTNOTES

See Oklahoma Supreme Court Rule 1.11(k)(1), 12 O.S. Supp. 2023, ch. 15, app.1 ("Issues raised in the Petition in Error but omitted from the brief may be deemed waived.")